## No. 25505

### The People of the State of Colorado
### v. Manuel Ramijo Maestas
(517 P.2d 461)

Decided December 24, 1973.

John P. Moore, Attorney General, John E. Bush, Deputy, Jack E. Hanthorn, Assistant, for plaintiff-appellee.

Michael L. Bender, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an appeal from a verdict of guilty and a life sentence for first-degree murder returned by a jury in the Adams County district court. We affirm.

The facts established at trial showed that appellant Maestas, with three other men, kicked a cabdriver to death outside a Commerce City bar. Appellant was tried jointly with one codefendant, Gerald Medina.

Maestas presents four grounds for reversal. Because few of the facts which form the basis for each issue are interrelated, each point of argument will be discussed separately in the context of the appropriate facts.

I.

The first issue presented is whether the trial court erred in refusing Maestas a separate trial. It is argued that the admission into evidence of a fingerprint and bloody clothes of the codefendant Medina, which were inadmissible against appellant, so prejudiced this defendant that he was denied a fair trial. Crim. P. 14. We do not agree.

A motion for a separate trial is addressed to the sound discretion of the trial court. *People v. Trujillo,* 181 Colo. 350, 509 P.2d 794 (1973). But discretion may be abused. In *Eder v. People,* 179 Colo. 122, 498 P.2d 945 (1972), therefore, we adopted the guidelines for severance of codefendants set forth in the *American Bar Association Standards of Criminal Justice Relating to Joinder and Severance* § 2.3(b)(i) (1968). The necessity of severance is tested by the standard that it must be "deemed appropriate to promote a fair determination of the guilt or innocence of a defendant." That abstract principle, in turn, is tested by the following: (1) Whether the number of defendants or the complexity of the evidence is such that the jury will probably confuse the evidence and law applicable to each defendant;

(2) whether evidence inadmissible against one defendant will be considered against the other defendant despite admonitory instructions; (3) whether there are antagonistic defenses. *ABA Standards, supra,* Commentary to § 2.3(b)(i). Accordingly, in *Eder, supra,* we reversed a conviction where the second and third elements were present. In that case, it was shown (1) the defenses were antagonistic; (2) one defendant took the stand and his attorney could not comment on the other defendant's silence; (3) one defendant, if tried first, could conceivably testify on behalf of the other at a subsequent trial; (4) the evidence was largely circumstantial and stronger against one defendant. *See also People v. Robles,* 183 Colo. 4, 514 P.2d 630 (1973).

Viewing this record in light of these principles, however, we fail to see how severance would have promoted a demonstrably fairer determination of guilt or innocence than that obtained here. Neither the number of the defendants nor the complexity of the evidence would precipitate jury confusion. The fingerprint and clothes of Medina were admitted, but the necessary admonitory instructions were given. Furthermore, the record contradicts any argument that the defendants were placed in an antagonistic posture. Indeed, they both testified at trial and presented essentially congruent evidence. The proof of each defendant's guilt, moreover, is not discernibly disparate. In short, we perceive no meaningful prejudice which would have been eliminated by a separate trial.

II.

Appellant next argues that the trial court erred in denying defense a motion for discovery of felony records of witnesses for the People, Crim. P. 16(c), and a motion for discovery of witness' statements, Crim. P. 16(i).

Taking up first the request for records of any witness' felony conviction, if any, there were two crucial lay eyewitnesses to the crime who testified for the People; the others were policemen, experts, the wife of the deceased, and three persons who did not see the crime. Before trial, Maestas' counsel made a broad motion for discovery,

requesting the prosecution to furnish "any record of prior felony convictions of persons listed on the information as witnesses for the People." The motion was denied after a hearing on the merits. Though the motion was not renewed at any subsequent time, appellant now contends the failure to grant discovery of the felony records of the two crucial witnesses is reversible error.

Crim. P. 16(c), addressed to "other matters" is the section of the rule governing requests of this type. As we have held in the past, the trial court must exercise sound discretion in permitting such discovery, guided by the standards suggested in subsection (2) of Crim. P. 16(c). *People ex rel. Shinn v. District Court,* 172 Colo. 23, 469 P.2d 732 (1970). To show an abuse of discretion on appeal, however, the facts must reveal that the defendant was prejudiced. The record in this case strongly suggests that the defendant was not prejudiced. We note that defense counsel never asked the witnesses on cross-examination whether they had been convicted of a felony. There is a total absence of any suggestion of prior felony convictions.

On the matter of the statements, defense counsel made a motion under Crim. P. 16(i) prior to trial which was denied. As in the case of the felony records, we can find no indication that witnesses' statements were withheld by the People or that they existed in written form. The record shows that all police records, notes and statements were readily made available to Maestas. Of the two lay witnesses who witnessed the crime, one admitted making prior statements on cross-examination by defense counsel. Those statements, however, were not made to the police and there is nothing in the record that suggests that the People had such statements in their possession. Thus, we perceive no prejudice attributable to the trial court's denial of the motion.

### III.

Appellant contends next that the trial court erred in its failure to declare a mistrial, to grant a motion to strike, or to preclude prosecutorial comment because of a non-responsive

answer by a witness for the People.

The People called an FBI employee as an expert witness. The purpose of his testimony was to establish that the blood found on the defendant's clothes was that of the victim. In response to a question on cross-examination which related to the size of the blood stains on defendant's clothing, the witness answered: "* * * some of the stains on the lower left part of the trousers appear in, based on my experience, to have been deposited in the form of spatters." Because he felt this remark to be highly prejudicial, appellant's counsel moved for a mistrial and further moved that the testimony be stricken and the prosecutor precluded from commenting further as to the form of the bloodstains. These motions were denied and are preserved on appeal. The latter contention need not be discussed, for the record establishes that the prosecution did not comment on the "spatters" except to invite the jury to view the stains as they appeared on defendant's pants and to draw their own conclusion. The pants were admitted into evidence. The prosecution's remarks were not made in a spectacular manner, thereby inviting prejudice, and counsel may comment on that evidence which is admitted at trial. *Lewis v. Oliver*, 129 Colo. 479, 271 P.2d 1055 (1954).

With regard to the court's denial of the motions for mistrial and to strike the testimony, we believe appellant's characterization of the answer as unresponsive to be somewhat inaccurate. The question was as to the size of the bloodstains. The witness answered by saying they ranged in size from that of a pinhead to a penny, some of them appearing to have been deposited in the form of spatters. Though the latter was perhaps unnecessary, it did explain that the stains were small rather than smeared or soaked. The answer, therefore, was not totally without bearing on the question posed by defendant's counsel.

More importantly, even assuming the portion of the answer complained of was unresponsive, it was relevant testimony, for it explained the circumstances surrounding defendant's participation in the fight and was probative of

defendant's assertion that he did not strike the victim. There is nothing *per se* wrong with the admission into evidence of testimony which may be unresponsive, provided that testimony is relevant for some purpose. 3 *J. Wigmore, Evidence* § 785 (J.H. Chadbourn ed. 1970). Where an answer is *both* unresponsive and inadmissible testimony, it should be stricken. Here, however, it was relevant, and the admission of relevant testimony cannot be the basis for a claim of prejudice.

▮▮▮▮ As for the denial of the motion for mistrial, this rests within the discretion of the trial court and is only error where discretion is abused and prejudice results. *Scott v. People,* 166 Colo. 432, 444 P.2d 388 (1968); *Maisel v. People,* 166 Colo. 161, 442 P.2d 399 (1968).

### IV.

As his final argument for reversal, appellant alleges error in the trial court's failure to admit evidence, offered by him before trial, which tended to show that a death-qualified jury was partial towards the prosecution on the issue of guilt.

▮▮▮ This issue, which springs from the United States Supreme Court decision in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), is not properly presented in this appeal. The *Witherspoon* court did not hold that a death-qualified jury was more conviction-prone, but rather, specifically refused to hold that exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or increases the risk of conviction. Appellant's assertions aside, we do not have ample information to test the validity of that hypothesis, whether on the basis of judicial notice or sociological knowledge. The record is devoid of such proof. We therefore refuse to consider the issue as properly before the court.

The judgment is affirmed.