No. 25749

**The People of the State of Colorado v.
Inisio Anthony Gonzales**
(525 P.2d 1139)

Decided August 6, 1974.          Rehearing denied August 26, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Thomas M. Van Cleave III, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Appellant Gonzales was found guilty by a jury of burglary (C.R.S. 1963, 40-3-5) and theft (1965 Perm. Supp., C.R.S. 1963, 40-5-2). He received concurrent sentences. On this appeal, Gonzales asserts that the two inculpatory statements he made to the police after arrest were improperly admitted into evidence because he was arrested without probable cause and the statements were not voluntary. Also, it is contended that the evidence is insufficient to sustain the jury verdicts, and that the jury should not have been instructed on the subject of flight. We find no merit to the defendant's contentions and we therefore affirm the judgment of the trial court.

Approximately $3,248 mysteriously disappeared between noon and 2:00 p.m. from the cashier's cage of a discount

food store. No one saw the defendant in the store. As the result of a tip from an informant that the defendant had taken this money and had purchased an automobile with some of it, the police arrested him. Thereafter, the defendant made inculpatory statements, the admissibility of which he now challenges. Other pertinent evidence will be included in the discussion of the issues.

I.

Defendant claims that his inculpatory statements should not have been admitted into evidence because the police did not have probable cause to arrest him. Consequently, he asserts, his statements while in custody after arrest were not admissible as being the "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In *Wong Sun,* the standard for a probable cause arrest, with or without a warrant, was delineated as follows:

". . . It is basic that an arrest with or without a warrant must stand on firmer ground than mere suspicion, *see Henry v. United States,* 361 U.S. 98, 101, *though the arresting officer need not have in hand evidence which would suffice to convict.* The quantum of information which constitutes probable cause — evidence which would 'warrant a man of reasonable caution in a belief' that a felony had been committed, *Carroll v. United States,* 267 U.S. 132, 162 — must be measured by the facts of the particular case. . . ." (Emphasis added.)

In this state, an officer is statutorily authorized to make an arrest *without* a warrant "when a criminal offense has, in fact, been committed, and he has reasonable grounds for believing that the person to be arrested committed it." C.R.S. 1963, 39-2-20.

We look now to the evidence on which the investigating officer, Detective Sergeant Bravo, made the arrest. From our analysis of the facts in the light of the *Wong Sun* standard, we find that there was probable cause to make the warrantless arrest here.

The record shows that Mrs. Milhelich, the cashier, counted

the cash, separated the currency into bundles by denomination, *i.e.,* $20's, $10's, $5's and $1's, at 7:00 a.m. and at 12 o'clock noon. After the 12 o'clock count, she left the store for the day.

Mrs. Milhelich counted the cash in the cash registers and in the cashier's cage. At 12 o'clock, there was in excess of $10,000 in cash, checks and currency. The adding machine tapes which she made showed two items of $1,000 and two items of $500. Mrs. Milhelich explained that the $1,000 items represented $20 bills and one $500 item represented $10 bills. The other $500 item represented $5 bills. She explained every item on the tapes and stated that she had counted each one.

When Mrs. Milhelich left, no one replaced her in the cashier's cage. The cage had a window and a door with a snap lock that could be opened by reaching over the door and pushing a release on its underside. The manager and two assistant managers entered the cage on occasion in order to cash customer checks.

At approximately 2:00 p.m., one of the assistant managers went in to cash a check and discovered that there were no $20 bills. He called the bookkeeper who made an immediate audit in the same fashion as the cashier had done earlier. The audit disclosed a shortage of $3,248.48.

At the trial, the manager, assistant manager and the bookkeeper, all of whom had been in the store continuously since before 12 o'clock noon, testified that they did not know the defendant and none of them had seen him in the store on Saturday.

The first information as to defendant's involvement was received by Police Corporal Koncilja. A paid informer, on or about October 27th, advised him:

". . . that the Defendant, Gonzales, was the individual who had removed an amount of money from So-Lo Discount . . . . that he had used this money to buy a late model white GTO in the Denver area and had used the money from the theft to pay for this particular vehicle."

The officer testified that the informant had furnished information which led directly

". . . to the conviction of currently five individuals and there are four more individuals who are to come to trial within the district courts in Pueblo, and there are five who will be appearing before the district courts in Denver."

This information was furnished to Detective Sergeant Bravo, who checked with the motor vehicle registration bureau and learned that a 1966 white Pontiac GTO had recently been registered in the name of the defendant. He also checked with the Welfare Department and learned that the defendant was a welfare recipient.

The registration revealed that the automobile had been purchased in Lakewood, Jefferson County, Colorado on October 15th (five days after the theft). Officer Bravo requested an investigation by the Lakewood Police Department. The Lakewood Police Department's investigation report revealed that it had

". . . contacted Mr. Roth of Jerry Roth Chev., Inc. and learned that Mr. Gonzales purchased said vehicle with cash in the amount of $1,452.00 and Mr. Roth further states that to the best of his knowledge payment was made mostly with twenty dollar bills."

On the basis of all of the foregoing information, the arrest was made. In assessing probable cause to arrest without a warrant, all evidence within the knowledge of the arresting officer may be considered even though it may not be competent evidence at trial. *Draper v. United States,* 385 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). *See also Gallegos v. People,* 157 Colo. 173, 401 P.2d 613 (1965).

In reaching the conclusion that probable cause existed at the time of the arrest, we have considered and applied the rulings in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

## II.

Next, the defendant alleges that the inculpatory statements he furnished to the police were inadmissible because they were coerced and were thus, involuntary. The voluntariness of the defendant's statements was the subject of two suppression hearings, one, prior to trial, and one,

during the course of the trial. On behalf of the defendant, there was presented at the two suppression hearings, different accounts of the alleged coercive activity on the part of the police. On the other hand, there was evidence indicating that no coercion whatsoever occurred and that the bruises which were suffered by the defendant were the result of his attempt to escape and apprehension after arrest. After the two extended suppression hearings, the trial court made a finding that the defendant's statements were voluntary.

Evidence in this record supports the finding of voluntariness on the part of the trial judge.

### III.

The defendant contends that without the admission of the defendant's statement there is no sufficient evidence to sustain either the burglary or theft conviction. In view of our ruling on the admissibility of the statement, we need only consider the sufficiency of the evidence, including the admissions in his statement to the police, to determine whether the *corpus delicti* has been established. We recognize that the *corpus delicti* must be corroborated independently of the confession. *People v. Maestes,* 183 Colo. 378, 517 P.2d 461 (1973); *Martin v. People,* 179 Colo. 237, 499 P.2d 606 (1972) and cases cited therein. The corroboration may be either direct or circumstantial.

Here, a brief reference to the facts set out previously discloses adequate corroboration of the defendant's admissions found in the statement and there is no need to prolong this opinion by analysis or repetition.

### IV.

By Instruction No. 13, given by the court, the jury was told that if it found that the crimes charged in the information were committed by some person, and that immediately after being apprehended the defendant fled, such flight would be a circumstance, not sufficient in itself to establish guilt, but which, together with all other facts and circumstances proven at the trial, could be considered in determining the guilt or innocence of the defendant; that it

was for the jury to determine whether such flight was caused by a consciousness of guilt or by some other and innocent motive.

This instruction was given over the objection of defense counsel. He has assigned error, claiming that it places undue emphasis on one factor of defendant's behavior, citing *People v. Morant*, 179 Colo. 287, 499 P.2d 1173 (1972). We did condemn the instruction in *Morant* under the peculiar facts of that case, which are not present in the instant case.

██ Here, the defendant claimed that bruises on his body were caused by police brutality in trying to extract the confessions. The police explained the bruises as resulting from his attempted escape and apprehension shortly after his arrest. Under these circumstances, the court properly instructed the jury on the flight factor and the issue thus raised as to the cause of the bruises.

The judgment is affirmed.

MR. JUSTICE DAY, MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissent.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. In my view, the majority opinion ignores fundamental principles of constitutional law and firmly established rules of evidence in reaching its conclusion to affirm Gonzales' conviction.

I.

Probable Cause

The United States Constitution and the Colorado Constitution are couched in terms that protect an accused from an arrest when probable cause does not exist to establish that a crime has been committed by the defendant. *Colo. Const.*, Art. II, § 7; *U. S. Const.* amends. IV and XIV. *Marquez v. People*, 168 Colo. 219, 450 P.2d 349 (1969); *Johnson v. Enlow*, 132 Colo. 101, 286 P.2d 630 (1955). *See* C.R.S. 1963, 39-2-20. An arrest which is not supported by probable cause cannot stand in the light of constitutional standards. *People v. Moreno*, 176 Colo. 488, 491 P.2d 575 (1971);

*Whiteley v. Warden of Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). *See also* Colo. Sess. Laws 1972, ch. 44, 39-3-102 at 198.

At the time the defendant was arrested in this case, the only information that the police had was (1) that an accounting at the So-Lo Discount Food Store reflected that there was an abnormally low amount of cash on hand, and (2) that some unnamed person informed the police that the defendant took the money from the store and bought a car with the money. If probable cause to arrest exists, it stems entirely from the confidential informant's tip. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

The United States Supreme Court has repeatedly set forth the constitutional requirements which *must* be met before a confidential informant's tip may provide the basis for a finding of probable cause. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The *Aguilar-Spinelli* two-prong test stems from the Fourth Amendment to the United States Constitution and is binding upon this court. *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971).

"A rule stated in a decision by the Supreme Court of the United States and based upon the Federal Constitution is under the supremacy clause binding upon State Courts, as well as upon Federal Courts." *Henry v. Rock Hill,* 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed.2d 79 (1964).

Although a state is free to develop its own law of search and seizure to meet the needs of local law enforcement, and in the process may call the standards employed by any name it chooses, the states may not authorize police conduct which violates the *minimum* constitutional standards which the Supreme Court has announced. *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Under the Supremacy Clause, the state's power to alter Fourth Amendment rights is limited to imposing higher standards on police

conduct than the minimum standards required by the Federal Constitution. *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

The *Aguilar-Spinelli* two-pronged test limits the use of a confidential informant's tip to establish probable cause to only those instances (1) where the tip sets forth sufficient "underlying circumstances" which would be necessary to enable a judge to independently determine the validity of the informant's conclusion, and (2) where the prosecution establishes the credibility of the informant or the reliability of his information. Neither prong of the test is met under the facts of this case.

According to Officer Koncilja, the informant told him:

"[T]hat the defendant, Gonzales, was the individual who had removed an amount of money from So-Lo Discount . . . [and] that he had used this money to buy a late model white GTO in Denver."

The only alleged circumstance contained in the tip which is directed to the first prong of the test is the informant's unsupported assertion "that the defendant, Gonzales, was the individual who had removed an amount of money from the So-Lo Discount Store . . . ." The informant's assertion alone is nothing more than a conclusion that Gonzales was responsible for the disappearance of the missing funds. Mere conclusions of a confidential informant do not satisfy the first prong of the *Aguilar-Spinelli* test which requires a recital of the underlying circumstances from which the informant drew his conclusion.

"The Commissioner must judge for himself the persuasiveness of the facts relied on . . . to show probable cause. *He should not accept without question the . . . [informant's] . . . mere conclusion." Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail so that the magistrate may know that he is relying on

something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's reputation." *Spinelli v. United States, supra.*

No facts were provided by the informant which would allow a judge to independently assess the persuasiveness of the facts which led Koncilja's informant to accuse Gonzales.[1] As a result, the prosecution failed to satisfy the first prong of the *Aguilar-Spinelli* test.

In my view, the prosecution also failed to satisfy the second prong of the *Aguilar-Spinelli* test. Even at the time of the defendant's trial, the only facts which could tend to establish either the credibility of the confidential informant or the reliability of his information was Officer Koncilja's bald statement that the informant had provided reliable information in the past. We have held in the past that a police officer's unsupported testimony that a confidential inform-ant has been reliable in the past does not satisfy the second prong of the test. *People v. Brethauer, supra.* Officer Koncilja's statement in this case contains no supportive facts which would indicate that the informant was in a position to know whether Gonzales took the money, whether the informant's prior reliability dealt with the same type of crime, or whether the informant relayed facts of his own personal knowledge. *See Spinelli v. United States, supra; Aguilar v. Texas, supra.*

Accordingly, neither prong of the *Aguilar-Spinelli* test has been satisfied in this case, and as a result, probable cause did not exist to arrest Gonzales.

Moreover, assuming that probable cause did exist, the arresting officers made no attempt to obtain an arrest warrant even though three days elapsed between the time Officer Bravo completed his investigation of Gonzales'

---

[1] *See People v. Masson,* 185 Colo. 65, 521 P.2d 1246 (1974) (dissenting opinion). The only other fact contained in the tip alleges that Gonzales purchased a car with the money which was allegedly missing from the So-Lo Discount Store. Gonzales' purchase of a car, in and of itself, is a completely innocent act and does not constitute an "underlying circumstance" for the purpose of establishing probable cause to believe Gonzales took the money from the So-Lo Discount Store.

automobile purchase and the arrest. Both the United States Constitution and the Colorado Constitution make an arrest warrant mandatory prior to an arrest except in very limited circumstances.[2] *U. S. Const.*, Amend. IV; *Colo. Const.* Art. II, § 7; *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Giordenello v. United States, supra.* No explanation was offered to justify the police officers' failure to obtain a warrant, and I can only conclude that the officers were aware that an arrest warrant could not have been secured on the gossamer information which was received from the informant.

The lack of probable cause to arrest and the failure to obtain an arrest warrant made the defendant's arrest illegal and tainted the confession which followed the arrest. The prosecution failed to introduce evidence which would satisfy the heavy burden cast upon the prosecution to overcome the taint which attached to the defendant's confession by reason of an unlawful arrest. As a consequence, the confession should not have been admitted into evidence. *People v. Moreno, supra; Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## II.
### Corpus Delicti

Apart from the confession, no evidence appears in the record which would establish that a crime was committed, let alone that the defendant was guilty of the charges. The necessity of showing a *corpus delicti* for any crime requires the prosecution to show (1) that a loss or injury occurred, and (2) that criminality was the cause. *Downey v. People,* 121 Colo. 307, 215 P.2d 892 (1950); *Bruner v. People,* 113

---

[2] The Colorado statute which the majority opinion asserts as a basis for allowing an arrest without a warrant is, at best, of questionable constitutionality. *See* C.R.S. 1963, 39-2-20. Moreover, under the facts of this case, C.R.S. 1963, 39-2-20 is inapplicable. The statute applies only when "a criminal offense has, *in fact*, been committed." At the time Gonzales was arrested, there was no evidence available which would have shown that the loss of the funds from the So-Lo Discount Store was, *in fact*, the result of a criminal act.

Colo. 194, 156 P.2d 111 (1945); *Lowe v. People,* 76 Colo. 603, 234 P. 169 (1925).

The evidence in this case established that there was a loss of approximately $3200, but there is nothing, other than the defendant's involuntary and inadmissible confession, to show that the loss resulted from a criminal act. Therefore, the admissible evidence was insufficient to establish the *corpus delicti* of either the crime of burglary or theft. *Martin v. People,* 179 Colo. 237, 499 P.2d 606 (1973); *Owen v. People,* 155 Colo. 19, 392 P.2d 163 (1964); *Meredith v. People,* 152 Colo. 69, 380 P.2d 227 (1963). Note, *Proof of the Corpus Delicti Aliunde The Defendant's Confession,* 103 Univ. of Pa. L. Rev. 638 (1955). Accordingly, the defendant's Crim. P. 29 motion for a judgment of acquittal should have been granted. *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973).

However, even if for some reason the trial court was correct in allowing the confession to be presented to the jury, Gonzales' conviction should be reversed.

The majority opinion correctly states that the *corpus delicti* must be corroborated independently of the confession, then summarily ignores that evidentiary rule. Both elements of the *corpus delicti* must be proved beyond a reasonable doubt. Under the facts stated in the majority opinion, it cannot be denied that there is corroborative proof that a loss occurred. It is equally undeniable that, apart from the defendant's confession and the informant's tip which was not before the jury, there is not one scintilla of evidence which corroborates the criminal cause element of the *corpus delicti.* As a result, the *corpus delicti* is not corroborated as the majority asserts and the conviction should be reversed. *See Neighbors v. People,* 168 Colo. 319, 451 P.2d 264 (1969); *Owen v. People,* 155 Colo. 19, 392 P.2d 163 (1964); *Meredith v. People,* 152 Colo. 69, 380 P.2d 227 (1963); *Martinez v. People,* 129 Colo. 94, 267 P.2d 654 (1954); and *Downey v. People,* 121 Colo. 307, 215 P.2d 892 (1950).

MR. JUSTICE GROVES joins in Point II of this dissent.

### III.
### Jackson-Denno Hearing

I also dissent because the trial judge did not comply with the requirements of *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), in determining the voluntariness of the confession. The trial judge made no finding of facts, as required by *Jackson v. Denno, supra,* from which it may be determined whether Gonzales' confession was in fact voluntary.

In my view, Gonzales is entitled to have the confession issue remanded for a *Jackson-Denno* hearing which meets constitutional muster and results in the generation of specific findings of fact. In my view, this court may not summarily uphold a trial court's ruling that a challenged confession is voluntary when the conclusion is not buttressed by findings of fact.

MR. JUSTICE DAY joins me in Point III of this dissent.