The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Andrew ROYBAL, Defendant-Appellee.

No. 82SA365.

Supreme Court of Colorado,
En Banc.

Dec. 20, 1982.

Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Jess Vigil, Deputy State Public Defender, Denver, for defendant-appellee.

LOHR, Justice.

The prosecution brings this interlocutory appeal from an order of the Denver District Court suppressing certain statements made by the defendant from use as evidence in his forthcoming trial on the charge of vehicular assault, section 18–3–205, C.R.S.1973 (1978 Repl.Vol. 8). We affirm in part and reverse in part.

The defendant, Andrew Roybal, was the driver of an automobile that was involved in a collision with another car at 18th Avenue and Logan Street in Denver in the early morning hours of May 3, 1980. Officer Eaton of the Denver Police Department, one of the investigating officers, was the sole witness at the suppression hearing and gave the following account of the events. Roybal's car was at the scene, but he was absent, when the officers arrived. During the course of the investigation the defendant returned and advised the officers that he was the driver of one of the vehicles and had left the scene earlier to call the police. Officer Eaton noticed an odor of alcoholic beverage about the defendant. The officers placed him in a police car, where one policeman advised him of his *Miranda*[1] rights. Thereafter, while in the squad car at the accident scene, the defendant gave a written statement about the collision and his activities leading up to it.

The defendant was charged with vehicular assault, driving under the influence of intoxicating liquor and a narcotic drug,[2] and reckless driving.[3] The latter two charges were dismissed on the motion of the prosecution on the day set for trial.

The defendant moved to suppress all his statements relating to the incident on the ground, among others, that they were the products of an illegal arrest. This motion was heard immediately in advance of the scheduled trial. After hearing the evidence, the trial court suppressed the statements as the products of an arrest that violated the defendant's constitutional rights because it was not supported by probable cause to believe the defendant had committed a crime. The prosecution challenges that ruling on two bases. First, it contends that the trial court erred in concluding that there was no probable cause to arrest the defendant. Second, the People argue that even if the arrest was unconstitutional the defendant's verbal statement when he first returned to the accident scene preceded the arrest and should not have been suppressed. We agree with the second argument but not with the first. We begin by addressing that second contention.

I.

Although the minute order based on the suppression hearing reflects that the defendant's motion to suppress was granted in its entirety, it is apparent from the transcript of the hearing that the trial judge focused on the written statement alone in making his ruling. A motion for clarification of the order most likely would have eliminated any need to appeal the suppression of the oral statement.

Officer Eaton's testimony is undisputed and unequivocal that, before the officers spoke to the defendant, Roybal approached them and volunteered that he was the missing driver. There is no support in the record for a conclusion that the defendant was in custody or under restraint of any kind when he made the oral statement. The sole basis on which the trial court grounded its

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** Section 42–4–1202(1)(a) and (1)(c), C.R.S. 1973.

**3.** Section 42–4–1203(1), C.R.S.1973 (1982 Supp.).

suppression order was that the statements were products of an illegal arrest. As the evidence is undisputed that the oral statement preceded the defendant's arrest, the order suppressing that statement must be reversed.

## II.

The People concede that Roybal was in custody when he gave his written statement and do not argue that the statement was not the product of that detention. Rather, the prosecution bases its argument for reversal on the assertion that, contrary to the court's ruling, there was probable cause to take the defendant into custody for the purpose of determining accurately the alcoholic content of his blood.[4]

The evidence at the suppression hearing was scanty. When the officers arrived at the scene they discovered that a driver was absent. After the officers began their investigation, the defendant appeared, volunteered that he was the missing driver, and stated that he had left the scene to call the police. Officer Eaton remembered that it was a "pretty serious accident"[5] and that the defendant had "an odor of alcoholic beverage about him." When questioned in detail by defense counsel, the officer said that Roybal "appeared coherent," "seemed to walk in a fairly normal manner, didn't have any problems talking or anything," and seemed to understand the questions asked during the *Miranda* advisement. In the course of that questioning the following exchange took place:

Q: As I understand your testimony, other than just an odor of alcohol, nothing about him indicated to you he was intoxicated.

---

4. We understand the People's argument to be that there was probable cause to believe the defendant was under the influence of intoxicating liquor when he drove his vehicle, in violation of section 42–4–1202(1)(a), C.R.S.1973 (1978 Repl.Vol. 8).

5. This is the extent of the evidence about the nature of the collision. As a result of the accident, the defendant was charged with causing serious bodily injury to a victim.

A: Well, I didn't say he didn't indicate to me he wasn't [sic] intoxicated. I just said he appeared in a fairly normal manner, not what would you say overly drunk.

■▆▆ It is not entirely clear whether the People concede that the defendant was under arrest when he gave his written statement or whether by describing the custody as accomplished for the purpose of determining accurately the alcoholic content of his blood they are asserting that this was only an investigatory stop. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). It appears from the record, however, that the defendant remained in custody after his questioning and was transported "downtown" in handcuffs for the purpose of administering a blood alcohol test. There is no indication in the record that the decision of the police to perform the blood alcohol test was dependent in any way upon his responses to the questioning in the squad car. Whenever detention and questioning by a police officer are more than brief and cursory there is an arrest, which must be supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *People v. Schreyer*, 640 P.2d 1147 (Colo.1982);[6] *People v. Tooker*, 198 Colo. 496, 601 P.2d 1388 (1979). We believe the trial court correctly concluded that the defendant's detention was an arrest, not an investigatory stop, so the standards to test the constitutional validity of a brief investigatory stop are not applicable here. *See generally People v. Schreyer, supra.*

▆▆▆ To pass constitutional muster, an arrest must be supported by probable cause. *E.g., People v. Gomez*, 193 Colo. 208, 563

---

6. In *Dunaway v. New York, supra*, the United States Supreme Court recognized that whether a "seizure" has taken place for Fourth Amendment purposes is not dependent on the definition of "arrest" under state law. 442 U.S. at 212, 99 S.Ct. at 2256, 60 L.Ed.2d at 836. In *People v. Schreyer, supra*, we implicitly treated an arrest under Colorado law as equivalent to a Fourth Amendment seizure. *See* section 16–3–102, C.R.S.1973 (1978 Repl.Vol. 8).

P.2d 952 (1977). Probable cause to arrest exists when "facts available to a reasonably cautious officer at the moment of arrest would warrant his belief that an offense has been or is being committed" by the person to be detained. *People v. Navran,* 174 Colo. 222, 225, 483 P.2d 228, 230 (1971); *accord, e.g., People v. Schreyer, supra; see* section 16–3–102, C.R.S.1973 (1978 Repl.Vol. 8). The burden of proving facts constituting probable cause to arrest without a warrant is on the prosecution. *E.g., People v. Eichelberger,* 620 P.2d 1067 (Colo.1980); *People v. Gomez, supra.*

■ The record is barren of evidence that the collision occurred as a result of misconduct by the defendant. All that we learn from the record is that an accident took place, the defendant was driving one of the cars involved, and he had an odor of alcoholic beverage about him. Although the officer's testimony and his decision to administer a blood alcohol test are suggestive of an opinion that the defendant was under the influence of alcohol, the single objective fact to which he testified in support of any such conclusion is the odor of alcoholic beverage.[7] An odor of alcoholic beverage is not inconsistent with ability to operate a motor vehicle in compliance with Colorado law. *See* section 42–4–1202(2)(a), C.R.S.1973 (1978 Repl.Vl. 8) (1982 Supp.). The prosecution argued to the trial court that the driving, the accident and the odor of alcoholic beverage taken together are enough to establish probable cause. Under the circumstances here, including the lack of any indication that the defendant was at fault in causing the collision, and officer Eaton's testimony reflecting that he observed none of the common indicia of intoxication in the defendant's speech, walk, and ability to understand, we agree with the trial court that the People did not carry their burden to prove the existence of probable cause.[8] Therefore, we affirm the trial court's order suppressing the written statement from use as evidence at the defendant's trial.

We affirm in part, reverse in part, and remand the case for further proceedings.

ROVIRA, J., dissents, and LEE, J., joins in the dissent.

ROVIRA, Justice, dissenting:

I respectfully dissent from Part II of the majority opinion holding that there was not probable cause to take the defendant into custody and that probable cause was necessary.

A brief review of the facts and circumstances surrounding this case, in addition to those set out in the majority opinion, will be helpful. The accident in which the defendant was involved took place on May 3, 1980. He was charged with vehicular assault, driving under the influence of intoxicating liquor, and reckless driving. He failed to appear in court as required, and an alias

---

7. We find Eaton's testimony that the defendant was not "overly drunk," taken together with that officer's statements that Roybal exhibited no significant problems in ability to walk, talk and understand, to be too ambiguous to be equated with an opinion that the defendant was under the influence of intoxicating liquor.

8. The prosecution has cited no case in which an odor of alcoholic beverage, without more, has been held to constitute probable cause to believe a person is under the influence of intoxicating liquor. *Compare People v. Smith,* 175 Colo. 212, 486 P.2d 8 (1971) (probable cause found to arrest driver who had an accident after driving in excess of eighty miles an hour where an odor of alcoholic beverage was present in the car and on the breath of several of the other occupants, but was not detected on the driver); *Hall v. Charnes,* 42 Colo.App. 111,

590 P.2d 516 (1979) (there were reasonable grounds to believe driver was under the influence of alcohol where his auto was weaving and speeding, there was an odor of alcoholic beverage on his breath, and he did not satisfactorily perform roadside sobriety test); and *Gilbert v. Dolan,* 41 Colo.App. 173, 586 P.2d 8 (1978) (there were reasonable grounds to believe a driver was under the influence of alcohol where he drove erratically, had a strong odor of alcoholic beverage on his breath, slurred speech, a staggered walk, and other indicia of intoxication) *with Lucero v. Charnes,* 44 Colo.App. 73, 607 P.2d 405 (1980) (no reasonable grounds to believe defendant was under influence of alcohol based on involvement in accident and having bloodshot, watery eyes). *See generally People v. Helm,* 633 P.2d 1071 (Colo.1981).

warrant for his arrest was issued on October 20, 1980. It was not until April 23, 1982, that the defendant was apprehended. His trial began on July 28, 1982, and on the next day, the defendant filed his motion to suppress, which is the subject of this interlocutory appeal.

Officer Eaton testified that the accident which he and his partner investigated on May 3, 1980, was serious enough to call in the traffic investigators. He further testified that the defendant approached him and his partner and stated that he was the driver of one of the cars involved in the accident and he had gone to call the police and just returned. Officer Eaton established without contradiction that the defendant had an odor of alcoholic beverage about him but was not staggering, did not have trouble walking, and seemed to understand the *Miranda* advisement that he had been given.

During the course of his examination and cross-examination, Officer Eaton was frank to admit that because of the passage of over two years from the date of the accident he could not remember every detail, and on more than one occasion stated that he would have to check his notes to refresh his recollection.

The trial court determined that the defendant was appropriately advised of his constitutional rights under *Miranda* and his written statement was voluntarily made. However, the court concluded there was no probable cause to arrest because the mere smell of alcohol on the defendant's breath does not warrant an arrest for drunk driving.

The majority opinion does not find probable cause to arrest because all we know is that the defendant was driving a car involved in an accident and he had an odor of alcohol about him. In my view, there was probable cause to arrest because the officer knew that a serious accident had occurred at approximately 1:00 a.m., the defendant orally admitted he was one of the drivers, and he had an odor of alcoholic beverage about him. The fact that there was no evidence in the record of the suppression hearing to show that the defendant caused the accident is not relevant, as the purpose of the drunk-driving laws is not merely to punish those drivers who commit traffic violations while their ability is impaired by alcohol. *See Johnson v. Motor Vehicle Division,* 38 Colo.App. 230, 556 P.2d 488 (1976).

We have said on numerous occasions that probable cause to arrest exists where the facts and circumstances within an officer's knowledge are sufficient to warrant a cautious and prudent officer's believing, in light of his training and experience, that an offense has been committed and the person arrested committed it. *People v. Vigil,* 198 Colo. 185, 597 P.2d 567 (1979); *People v. Gonzales,* 186 Colo. 48, 525 P.2d 1139 (1974). We have also held that probable cause may be based on the personal observations of the arresting officer. *People v. Saars,* 196 Colo. 294, 584 P.2d 622 (1978). It has often been noted that experienced police officers "naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens." *People v. Gale,* 9 Cal.3d 788, 795–96, 108 Cal.Rptr. 852, 858, 511 P.2d 1204, 1210 (1973). The question of whether a person's ability is impaired by alcohol is a highly subjective one in the absence of objective measures of blood-alcohol content. That the suppression hearing was held more than two years after the accident is the result of defendant's failure to appear when required. It is hardly equitable to conclude that probable cause does not exist when the defendant has absented himself until memories have dimmed. In such a case, the court at the suppression hearing is deprived of "all the particularized perceptions which may have been so meaningful at the scene." *Id.*

Probability, not certainty, is the touchstone of reasonableness, *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), and it is under this standard that we should review the act of the officer in arresting the defendant. As we have stated so often, probable cause involves probabilities that "are not technical, but are factual

and practical questions of everyday life upon which reasonable and prudent men act." *People v. Baird,* 172 Colo. 112, 119, 470 P.2d 20, 24 (1970). *See also People v. Stevens,* 183 Colo. 399, 517 P.2d 1336; *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

The citizens of Colorado have spoken frequently of their concern about drunken drivers on the highways. The mortality and injury statistics have clearly demonstrated that persons who drink and drive are a danger to themselves and others. The legislature has passed, and the Governor has approved, legislation to protect citizens and has placed a major portion of the responsibility for enforcing these laws on the police. The "implied consent" law, section 42–4–1202(3)(a), C.R.S.1973 (1982 Supp.), demonstrates the well-founded concern of the legislature of getting drinking drivers off the highway and protecting the lives and property of citizens.

In the case before us, the officers knew that a serious accident had occurred at 1:00 a.m. and the defendant had the smell of alcohol about him. Obviously, they did not know whether the defendant had consumed enough alcohol to raise the presumption that he was driving under the influence of intoxicating beverage or while his ability to drive was impaired. That knowledge could be obtained only after he was given the opportunity to take a blood or breath test pursuant to section 42–4–1202(3)(b), C.R.S. 1973. What the officers did know, however, was sufficient to meet the test of "sufficient probability" to arrest.

The majority makes much of the fact that other indicia of intoxication, such as slurred speech and a staggering gait, were not exhibited by the defendant. I believe that requirement of such indicia thwarts the administration of the drunk-driving laws. The legislature has seen fit to define two different offenses involving driving after drinking—driving while ability impaired by alcohol and driving under the influence of alcohol. Section 42–4–1202(2)(b), (c), C.R.S.1973 (1982 Supp.). A blood-alcohol content of between 0.05 percent and 0.10

percent raises a presumption of impairment, yet a person whose content is slightly over 0.05 percent often will not exhibit the gross indicia seemingly required by the majority. Nevertheless, their reflexes, coordination, and judgment are diminished to an extent rendering them less fit to drive.

Even if probable cause did not exist in this case, I would not suppress the statement, because I do not believe that full probable cause is required in such a circumstance. The majority's conclusion that the defendant was under arrest is based in part upon the fact that after the defendant made his statement he was handcuffed and taken "downtown" for the purpose of administering a blood-alcohol test. That fact, however, is largely irrelevant to the question of whether the defendant was under arrest at the time he made his statement.

There is nothing in the record, except the giving of *Miranda* warnings, to distinguish this case from the thousands of accident cases that occur every year in Colorado. When there is a traffic accident, the police generally fill out an accident report based upon what is told them by the parties, as well as upon their own observations. Quite often, the drivers' statements are taken in the patrol car. Although the trial court based its decision on the police officer's testimony that the defendant was not free to leave, that is a factor that is present in most accident investigations. Section 42–4–1406(1), C.R.S.1973 (1982 Supp.), requires the driver of a vehicle involved in a traffic accident, if so requested, to "remain at the scene of the accident until [the] police have arrived at the scene and completed their investigation thereat." In other words, under the statute, the police have the authority to detain the drivers until they have completed their investigations. That is what they did here.

As mentioned above, the only distinguishing feature of this case is the fact that *Miranda* warnings were given. Curiously, these warnings appear to have converted an otherwise proper investigatory stop into an illegal arrest, despite the fact that we have previously held that the police officer's

characterization as either a "stop" or an "arrest" is not controlling. *People v. Stevens, supra.* *See also People v. Pancoast,* 644 P.2d 314 (1982) (The police officer's subjective state of mind as to whether suspect is free to leave is not the standard for determining whether and when a person has been arrested.) I am unable to perceive the benefits of creating a disincentive for the police to give *Miranda* warnings. The conclusion that because *Miranda* warnings are required if a person is interrogated while under arrest, a person is under arrest if the *Miranda* warnings are given, is logically flawed.

In my opinion, the majority is doing one of two things. One alternative is that it is declaring section 42–4–1406(1) unconstitutional *sub silentio* as permitting an "arrest" without probable cause. The other alternative is that the giving of *Miranda* warnings converts a detention permissible under section 42–4–1406(1) into an impermissible arrest if the warnings are given at a time when probable cause to arrest does not exist. I believe neither of these results desirable.

For all of the above reasons, I do not believe that the defendant's written statement should be suppressed.

LEE, J., joins in this dissent.