**THE PEOPLE OF THE STATE OF COLORADO, Plaintiff–Appellee,**

v.

**Gary Dean MERSMAN, Jr., Defendant–Appellant.**

No. 04CA0414.

Colorado Court of Appeals. Division III.

March 9, 2006.

As Modified on Denial of Rehearing May 11, 2006.

Certiorari Denied Nov. 20, 2006.*

---

* Justice EID does not participate.

*Justice HOBBS would grant as to the following issues:*

Whether, as a matter of first impression, the court of appeals erred in holding that the evidence was sufficient to prove the offense of DUI beyond a reasonable doubt.

Whether the court of appeals erred in applying the plain error standard of review to prejudicial statements made by a venireman during voir dire where defense counsel objected to the prejudicial statements and asked for a mistrial.

Whether, as a matter of first impression, prejudicial statements by a venireman require the trial court to: 1) grant a mistrial; 2) give a curative instruction; or 3) canvass the jury and whether the trial court's failure here to provide any of the three remedies require reversal.

John W. Suthers, Attorney General, Clemmie Parker Engle, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

TAUBMAN, J.

Defendant, Gary Dean Mersman, Jr., appeals the judgment of conviction entered on a jury verdict finding him guilty of aggravated driving with a revoked license, driving under the influence of alcohol, and driving under restraint. We affirm in part, vacate in part, and remand with directions to correct the mittimus.

In August 2003, Mersman borrowed a friend's vehicle to visit his ex-girlfriend, G.D. At the time, G.D. lived in a mobile home owned by R.H.

When Mersman arrived at R.H.'s mobile home, G.D. ran out and sat in the vehicle with him. While seated in the vehicle, Mersman and G.D. emotionally discussed their relationship, cried, and shouted at each other. Alarmed, R.H. called the police.

Deputies Rowell and Sorenson responded to the disturbance call and found Mersman sitting in the driver's seat of the vehicle. Both deputies noticed physical indicators that Mersman had been drinking alcohol, such as watery, bloodshot, glazed eyes; faint to moderate odor of alcoholic beverage; and moderately slurred, "thick-tongued" speech. Mersman refused to take a chemical test of his breath or blood to determine blood alcohol content, even after being advised that his refusal would cause the loss of his license for one year under the state's express consent law.

In October 2003, a jury convicted Mersman of aggravated driving after revocation prohibited (DARP), driving under the influence of alcohol (DUI), and driving under restraint (DUR). This appeal followed.

### I. Sufficiency of Evidence

■ Mersman contends that the trial court erred in not granting his motion for judgment of acquittal because the prosecution did not present sufficient evidence to establish beyond a reasonable doubt that he was under the influence of alcohol at the time of his arrest. Because the DARP and DUI charges required the prosecution to prove beyond a reasonable doubt that he was driving a motor vehicle under the influence of alcohol, Mersman argues that his convictions for these two charges must be reversed. We disagree.

■ The Due Process Clauses of the United States and Colorado Constitutions prohibit criminal conviction except on proof of guilt beyond a reasonable doubt on each of the essential elements of a crime. *People v. Noland,* 739 P.2d 906 (Colo.App.1987). Proof beyond a reasonable doubt is proof that would lead a reasonable person to act without hesitation in matters of importance to himself or herself. *People v. Noland, supra.*

■ When deciding a motion for judgment of acquittal, the trial court must determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the charges beyond a reasonable doubt. *People v. Ned,* 923 P.2d 271 (Colo.App.1996).

The DARP statute requires the prosecution to prove beyond a reasonable doubt that the defendant was driving a motor vehicle while under the influence of alcohol. Section 42–2–206(1)(b)(I)(A), C.R.S.2005. The DUI statute contains the same requirement. Section 42–4–1301(1), C.R.S.2005.

> "Driving under the influence" is defined as: driving a vehicle when a person has consumed alcohol or one or more drugs, or a combination of alcohol and one or more drugs, which alcohol alone, or one or more drugs alone, or alcohol combined with one or more drugs affects the person to a degree that the person is substantially incapable, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle.

Section 42–4–1301(1)(f), C.R.S.2005.

Under § 42–4–1301(6)(d), C.R.S.2005, it is proper to instruct a jury that it can consider a driver's refusal to take a blood or breath test, along with other evidence, in determining his or her guilt of driving under the influence. *Cox v. People,* 735 P.2d 153 (Colo.1987).

Both parties agree that whether facts similar to those presented here are sufficient to constitute proof beyond a reasonable doubt that an individual was driving under the influence of alcohol is an issue of first impression in Colorado.

Nevertheless, Mersman relies on *People v. Reynolds,* 895 P.2d 1059 (Colo.1995), and *People v. Roybal,* 655 P.2d 410 (Colo.1982), in support of his contention that the prosecution did not present sufficient evidence that he drove under the influence of alcohol on the night he visited G.D. He argues that because the supreme court did not find probable cause in *Reynolds* and *Roybal* that the defendants there drove under the influence of alcohol, a fortiori, he could not have been under the influence of alcohol, because "probable cause" is a lower standard than "beyond a reasonable doubt" and the evidence of im-

pairment in those cases was equivalent to or greater than the evidence presented here. We disagree.

In *Reynolds,* the defendant was involved in a one-car accident with no witnesses, and he admitted to the police that he had consumed three beers more than six hours before the accident. There, the court found that those facts did not establish probable cause that the defendant had been driving under the influence of alcohol.

The *Reynolds* court based its decision on the arresting officer's testimony that the defendant did not present any of the familiar signs of intoxication, such as odor of alcohol, bloodshot eyes, or slurred speech. Here, between them, deputies Rowell and Sorenson testified to having observed all three of these indicators.

In *Roybal,* the defendant was involved in an accident with another vehicle. At the suppression hearing, the responding officer testified that when he arrived at the scene of the accident, the defendant admitted he was the driver of one of the vehicles. The officer also testified that the defendant had an odor of alcoholic beverage about him. The court found that these factors did not establish probable cause that the defendant had been driving under the influence of alcohol, noting that odor of alcoholic beverage is not inconsistent with the ability to operate a motor vehicle in compliance with Colorado law. *People v. Roybal, supra,* at 413.

However, the *Roybal* court expressly stated that its decision was also based on several other circumstances. First, the record was devoid of evidence that the collision occurred as a result of misconduct by the defendant. Second, the responding officer testified that he did not observe any common indicia of intoxication in the defendant's speech, walk, and ability to understand. *People v. Roybal, supra,* 655 P.2d at 413.

Here, Mersman exhibited these common indicia of intoxication (watery eyes that were becoming bloodshot and mild to moderately slurred speech) in addition to having a faint odor of alcoholic beverage about him. Furthermore, Mersman refused to submit to a blood alcohol or breathalyzer test, whereas the defendant in *Roybal* did not.

The prosecution argues that Mersman's common signs of intoxication and refusal to take the field sobriety and blood alcohol tests constitute sufficient evidence to prove that he drove the vehicle to visit G.D. while under the influence of alcohol. In support of its contention, the prosecution relies on the following decisions from other jurisdictions: *Long v. State,* 271 Ga.App. 565, 610 S.E.2d 74 (2004) (evidence sufficient where defendant smelled of alcohol, had bloodshot eyes, and refused to submit to field sobriety tests); *Merrell v. State,* 192 Ga.App. 100, 383 S.E.2d 905 (1989) (evidence sufficient where defendant exhibited smell of alcohol, red eyes, slurred speech, and unsteadiness on his feet and refused a blood alcohol test); *State v. Jordan,* 599 A.2d 74 (Me.1991) (evidence sufficient where defendant admitted that he had been drinking, exhibited difficulty in speaking and walking, had bloodshot eyes, smelled strongly of alcohol, refused to undergo field sobriety tests, and refused to take blood alcohol test).

While we acknowledge that the statutory language in these jurisdictions is different from that in Colorado, we conclude that the factual situations are sufficiently similar to offer guidance in evaluating the evidence in the present case. Here, as in the cases cited by the prosecution, Mersman exhibited common indicia of intoxication, and he refused to take chemical blood alcohol and breath tests.

Thus, viewing all the evidence in the light most favorable to the prosecution, we conclude it was sufficient to support Mersman's conviction. Accordingly, the trial court did not err in denying Mersman's motion for judgment of acquittal on the DARP and DUI charges.

## II. Mittimus

█ Mersman contends, the People concede, and we agree that the mittimus should be corrected to reflect the merger of the DUI conviction into the DARP conviction and that his DUI conviction should be vacated.

Driving under the influence is a lesser included offense of aggravated driving with a revoked license. *People v. Carlson*, 119 P.3d 491 (Colo.App.2004). Merger principles preclude conviction for a lesser included offense of a crime for which the defendant has also been convicted in the same prosecution. *People v. Carlson, supra.* Accordingly, the mittimus must be corrected to reflect the merger of the DUI conviction into the DARP conviction, and Mersman's DUI conviction must be vacated.

## III. Mistrial

Mersman contends that the trial court erred in denying his motion for a mistrial and not admonishing the jury to disregard highly prejudicial remarks made by a prospective juror during voir dire. We disagree.

Both parties acknowledge that the question of how a trial court should respond to potentially prejudicial remarks made by a prospective juror during voir dire is an issue of first impression in Colorado.

Initially, we note that the statements made by the prospective juror during voir dire may, in fact, have been prejudicial to Mersman's case. During voir dire, the prospective juror stated that she knew G.D., Mersman's only witness. When asked in front of the entire panel about the nature of her acquaintance with G.D., the prospective juror replied that her brother had known G.D. "through the drug scene."

A trial court has broad discretion to grant or deny a mistrial, and its decision will not be disturbed on appeal absent gross abuse of discretion and prejudice to the defendant. *People v. Abbott*, 690 P.2d 1263 (Colo.1984). A trial court only abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Veren*, 140 P.3d 131 (Colo.App. No. 03CA1820, Dec. 1, 2005).

However, a mistrial is the most drastic of remedies. *People v. Abbott, supra.* Moreover, a mistrial is warranted only where the prejudice to the accused is too substantial to be remedied by other means. *People v. Abbott, supra.*

While there are no cases in Colorado that discuss alternatives to a mistrial in the context of a prospective juror who has made prejudicial comments during voir dire, courts in other jurisdictions have discussed two such alternatives: curative instructions and jury canvassing. *See Mach v. Stewart*, 137 F.3d 630 (9th Cir.1997) (trial court must canvass jury to determine whether panel had been infected by prospective juror's prejudicial comments against defendant during voir dire); *United States v. Lacey*, 86 F.3d 956 (10th Cir.1996) (curative instruction and jury canvassing were necessary to assess and ameliorate any possible prejudice to defendant after prejudicial comment by prospective juror during voir dire); *State v. McMahon*, 271 Mont. 75, 894 P.2d 313 (1995) (prejudicial comments by prospective juror during voir dire not grounds for mistrial if trial court issues curative instruction).

Additionally, Colorado courts have discussed curative instructions and jury canvassing in other contexts.

Generally, curative instructions issued after a prejudicial statement is made will remedy any harm caused by the statement. *People v. McNeely*, 68 P.3d 540 (Colo. App.2002). However, to receive a curative instruction, a defendant must request it, and a trial court does not commit plain error if it does not give a curative instruction sua sponte. *See People v. Valencia–Alvarez*, 101 P.3d 1112 (Colo.App.2004) (trial court not required to issue sua sponte curative instruction in drug trial after prejudicial remarks by prosecutor); *People v. Ned, supra* (trial court did not commit plain error by not issuing sua sponte curative instruction after witness's emotional outburst in first degree murder prosecution); *People v. Pennese*, 830 P.2d 1085 (Colo.App.1991) (trial court not required to issue limiting instruction on prosecution's use of character evidence, absent defense request).

The supreme court has discussed juror canvassing in the context of exposure to extraneous media information. In *Harper v. People*, 817 P.2d 77 (Colo.1991), the court held, in relevant part, that a trial court must

canvass the jury to ascertain whether jurors have been exposed to potentially prejudicial publicity, and examine exposed jurors individually to ascertain how much they know of the publicity and what effect, if any, it has had on the juror's ability to decide the case fairly.

The supreme court has also stated that jury canvassing will help determine whether a juror's independent research has tainted jury deliberations. Specifically, the court in *People v. Harlan*, 109 P.3d 616 (Colo.2005), held that CRE 606(b) permits a trial court to inquire as to how the extraneous information relates to critical issues in the case; whether the information obtained by one juror was brought to the attention of another juror; and whether the information would be likely to influence a typical juror to the detriment of the defendant.

Thus, curative instructions and jury canvassing are two alternatives to a mistrial which may remedy the prejudice to a defendant that results from a prospective juror's prejudicial comments during voir dire. Although the Colorado cases do not discuss these two alternatives in the context of prejudicial comments by a prospective juror during voir dire, we conclude that their rationale is also applicable to such situations.

 The general rule in Colorado that curative instructions will normally remedy any harm caused by a prejudicial statement is also applicable where a jury panel is exposed to prejudicial comments by a prospective juror. A trial court's instruction to the remaining jurors to disregard the statement and render a verdict based on the evidence presented in court will normally be sufficient to cure any harm to the defendant. *See, e.g., People v. Kraemer*, 795 P.2d 1371 (Colo.App. 1990).

However, to receive a curative instruction in this context, a defendant must request it, and we conclude a trial court does not commit plain error if it does not give a curative instruction sua sponte.

Furthermore, while the decisions in *Harper* and *Harlan* involved extraneous media information and exposure to prejudicial extraneous information during jury delibera-

tions, respectively, we conclude that their rationale for canvassing the jury is also applicable in the context of prejudicial remarks made by a prospective juror during voir dire. This is particularly relevant here, where the People contend, with some record support, that the prospective juror's comments may not have been heard by the rest of the jury panel.

Here, Mersman moved for a mistrial without requesting a curative instruction. Furthermore, he did not request that the trial court canvass the jurors to see whether they had actually heard the prejudicial comment and, if so, whether it had affected their ability to decide the case fairly. Accordingly, we conclude the trial court did not abuse its discretion when it denied Mersman's motion for a mistrial.

Moreover, the trial court did not commit plain error in not giving sua sponte a curative instruction or canvassing the jurors to see whether they had actually heard the prejudicial comment and, if so, whether it had affected their ability to decide the case fairly.

Mersman relies on several cases from other jurisdictions in support of his argument that the trial court erred in denying his motion for a mistrial and not issuing a curative instruction to the jury. However, the comments made by prospective jurors in those cases were more prejudicial than that made here, and they related to the defendant instead of a defense witness.

For example, in *State v. McMahon, supra*, 271 Mont. at 77–78, 894 P.2d at 315, several prospective jurors stated during voir dire that they knew the defendant was capable of violence. One juror stated that in one situation a gun had been involved and that she had "seen him downtown in action." In *State v. Carmody*, 471 A.2d 1363 (R.I.1984), a prospective juror exclaimed that the defendant was guilty. Finally, in *State v. Strong*, 119 Ohio App. 31, 196 N.E.2d 801 (1963), a prospective juror said that, although she was normally against capital punishment, she was not in that case, where defendant was accused of killing two people and a dog.

Here, the prospective juror made a reference to G.D.'s involvement in the "drug scene" but G.D. was a defense witness, not the defendant. Accordingly, the out-of-state cases cited by Mersman are distinguishable.

However, the court in *McMahon* made a suggestion that is instructive for trial courts facing similar situations in the future. In that opinion, the Montana Supreme Court suggested that trial courts, before voir dire, advise prospective jurors not to volunteer the substance of any comments or opinions they may have about the parties. Rather, they should merely advise the court that they have information (or an opinion) about a party. The trial court can then explore the substance of that information in camera, thereby avoiding any possible taint to the entire jury panel. *State v. McMahon, supra.* This procedure could be applied by advising jurors to be circumspect in their responses to questions about parties or anticipated witnesses.

The DARP judgment is affirmed, the DUI judgment is vacated, and the case is remanded to the trial court to correct the mittimus accordingly.

Judge ROY and Judge LOEB concur.