**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Rance Randall REYNOLDS, Defendant–Appellee.**

**No. 94SA424.**

Supreme Court of Colorado, En Banc.

May 22, 1995.

Chris D. Hefty, Dist. Atty., Thirteenth Judicial Dist., Douglas J. Haynes, Deputy Dist. Atty., Burlington, for plaintiff-appellant.

Law Offices of Allen J. Kincaid, Allen J. Kincaid, Englewood, for defendant-appellee.

Justice SCOTT delivered the Opinion of the Court.

The People bring this interlocutory appeal from a suppression order entered by the

Yuma County District Court.[1] The order suppressed the results of a blood alcohol test performed on the defendant, Rance Randall Reynolds. Because the district court applied the correct legal standard and the record supports its order suppressing the test results, we affirm.

## I

On June 12, 1993, at approximately 3:00 a.m., defendant Reynolds was involved in a single vehicle traffic accident in Wray, Yuma County, Colorado. There were no witnesses to the accident. According to Reynolds' statement given to police after the accident, he was driving his GMC pickup truck when it struck a guardrail and caught fire. Reynolds and his passenger escaped from the vehicle, however, they were both injured and required medical attention for burns and other non-life threatening injuries.

While Reynolds was in the hospital emergency room receiving medical treatment, Officer Williams of the Wray Police Department approached Reynolds and questioned him regarding the accident. Officer Williams asked Reynolds if he had been drinking alcohol. Reynolds replied that he had consumed three beers that night between the hours of 6:30 and 8:30 p.m., more than six hours before the accident. Officer Williams then asked Reynolds to submit to a blood alcohol test. Reynolds declined to be tested, stating that he did not like needles. Officer Williams then ordered a medical staff member to draw Reynolds' blood, and provided that staff person with a DUI blood testing kit.

Reynolds' blood was drawn without his consent and tested. The results of the blood tests proved positive as to alcohol. As a consequence, Reynolds was charged with driving under the influence of alcohol,[2] driving with excessive alcoholic content,[3] vehicular assault,[4] and reckless driving.[5]

Reynolds filed a motion to suppress all statements made by him to law enforcement officers and all physical evidence seized, including the test results. The district court ordered the suppression of Reynolds' blood tests, finding that Reynolds' blood had been drawn without probable cause. The court denied suppression of Reynolds' statements, however, finding them voluntarily and knowingly made. The People filed this interlocutory appeal seeking review of that portion of the court order suppressing the test results taken from the blood withdrawn without Reynolds' consent.

## II

In *People v. Sutherland*, 683 P.2d 1192, 1194 (Colo.1984), we adopted the four-part test set forth in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and enumerated the criteria that must be established before a blood sample may be obtained involuntarily from a putative defendant:

> First, there must be probable cause for the arrest of the defendant on an alcohol-related driving offense. Second, there must be a clear indication that the blood sample will provide evidence of the defendant's level of intoxication. Third, exigent circumstances must exist which make it impractical to obtain a search warrant. Fourth, the test must be a reasonable one and must be conducted in a reasonable manner.

*Sutherland*, 683 P.2d at 1194.

In addition to the four requirements set forth in *Sutherland*, we have held that because of the "special insult to human dignity" involved when police seek evidence in body apertures or bodily fluids, special rules restrict internal searches, i.e., intrusive searches by which police "attempt[ ] to find evidence within the body." *People v.*

---

1. We have jurisdiction over this matter under § 16–12–102(2), 8A C.R.S. (1994 Supp.) and C.A.R. 4.1.(a). That statute and our rules allow the prosecution to obtain a ruling granting a motion made in advance of trial by the defendant to suppress evidence or an extra-judicial confession or admission.

2. § 42–4–1202(1)(a), 17 C.R.S. (1993).

3. § 42–4–1202(1.5), 17 C.R.S. (1993).

4. § 18–3–205(1)(b)(I), 8B C.R.S. (1994 Supp.).

5. § 42–4–1203, 17 C.R.S. (1993).

*Williams,* 192 Colo. 249, 257, 557 P.2d 399, 406 (1976). Those rules require that the officer must have probable cause to believe and there must exist a "clear indication" that relevant evidence will be obtained through such an intrusive search. Hence, we concluded that, while probable cause to suspect guilt of a crime was the proper standard to support an arrest, "an additional standard had to be met to justify extracting [a citizen's] blood ... for testing." *Id.* In typical alcohol or drug cases, the clear indication requirement is easily satisfied by observations of the defendant's speech, breath, appearance and conduct. *Id.,* 192 Colo. at 259, 557 P.2d at 407 n. 13.

### III

■ While we have held that "arrest is not a precondition to obtaining a blood sample from a person suspected of committing an alcohol-related felony offense," *Sutherland,* 683 P.2d at 1196, the threshold requirement, that of probable cause, must be met. *Id.* Thus, as our precedent instructs, we begin our review by first determining whether the probable cause requirement has been met.

### A

We have previously found that probable cause exists to obtain blood samples from defendants without a warrant or the defendant's consent where defendants have been observed to show obvious signs of intoxication and where the defendant's reckless conduct which has been observed by police officers or other witnesses is reasonably inferred to be alcohol-related. At the same time, however, we have also noted that evidence of drinking on the day of the suspected illegal conduct, alone, will not establish probable cause and "could support no more than a mere suspicion that [the defendant] might have been intoxicated several hours later." *Williams,* 192 Colo. at 259, 557 P.2d at 407.

In *People v. Milhollin,* 751 P.2d 43 (Colo. 1988), we determined that probable cause existed to obtain a blood sample from the defendant for the purposes of testing it for alcohol based on statements by witnesses made to the investigating officer. In *Milhollin,* witnesses testified that they had seen the defendant driving his motorcycle at an excessive speed and in a dangerous manner. *Id.* at 48. Witnesses observed and related to the investigating officers that the defendant ran a red light and caused an accident which resulted in injury to the defendant and his passenger. *Id.* The investigating officer interviewed the defendant in the hospital two hours after the accident and noted that defendant "had the odor of an alcoholic beverage" and bloodshot eyes. *Id.* We found these facts, i.e., the statements of witnesses who observed erratic conduct bolstered by the arresting officer's own observations of the defendant's condition, sufficient to establish that probable cause existed to arrest the defendant on an alcohol-related offense. *Id.* In *Milhollin,* the physical symptoms of the defendant clearly indicated that a blood sample might provide evidence of his intoxication. *Id.*

Prior to our holding in *Milhollin,* in *Sutherland,* we determined that probable cause existed to obtain a blood sample from a defendant because the evidence then available to the arresting officer suggested the involvement of alcohol in the offense charged to the defendant. The undisputed evidence in *Sutherland* included: an automobile accident had occurred in which several persons had been killed and others injured; the vehicle carrying the defendant and a passenger was observed on the wrong side of the road at the time of the collision; the defendant stated to the officer responding to the accident that he was "too drunk to drive," and indicated that his passenger had been the driver; the passenger of the vehicle reported that the defendant had been driving; and the officer noted the presence of alcohol on the breath of both the defendant and the passenger.

In both *Milhollin* and *Sutherland,* the defendants displayed physical symptoms or behavior indicative of intoxication. Furthermore, in both cases evidence existed indicating that the defendants had recklessly caused the accidents in which they were involved.

In this case, however, the People do not present witnesses or observations of the investigating officer that, independent of the

fact of the accident, provide evidence of the condition of Reynolds at the time of the accident sufficient to support a reasonable conclusion that the accident was alcohol-related, i.e., a factual basis to warrant a finding of probable cause as existed in *Milhollin* and *Sutherland.*

**B**

The district court found, and the record supports its determination, that the decision to obtain a sample of Reynolds' blood was based solely on evidence that an accident had occurred in which Reynolds was involved and that Reynolds had admitted to drinking three beers some six to nine hours prior to the accident. Such evidence, while sufficient to create a "mere suspicion," does not meet the standard of probable cause, i.e., facts available to a reasonably cautious officer to warrant his or her belief that an offense has been or is being committed, *People v. Roybal,* 655 P.2d 410, 413 (Colo.1982).

We are well aware of the possibility that in any given situation a nexus may exist between driving while drinking and automobile accidents. However, the occurrence of an automobile accident involving a person who had three beers more than six hours before the accident, while creating a suspicion that alcohol consumption played a role, does not alone provide a sufficient basis for a reasonable and prudent person to conclude the defendant was driving while intoxicated. Here, because there were no witnesses to the speed and direction of the pickup truck before the accident, there is no factual basis or evidence to conclude that Reynolds' accident occurred as a result of his misconduct or due to his driving under the influence of alcohol. No evidence was presented to suggest that Reynolds had been driving recklessly or that he had engaged in any misconduct. There was no evidence offered that would rule out mechanical failure. In addition there were no facts to suggest that Reynolds was not forced off the road by circumstances beyond his control. Officer Williams testified that Reynolds had stated to him only that "he did not remember going off the road," that "he was the driver of the vehicle," that after hitting the guardrail, "the pickup caught on fire," and that he and his passenger had a difficult time exiting the vehicle. The facts and circumstances known to Officer Williams do no more than provide a "mere suspicion" that Reynolds was involved in an alcohol-related offense.

Furthermore, although Reynolds admitted to drinking six to nine hours prior to the accident, that as well does not provide a sufficient basis to suspect that Reynolds was intoxicated at the time of the accident. In *Williams* we found:

> [T]he evidence of the defendant's drinking on the day of the shooting could support no more than a mere suspicion that she might have been intoxicated several hours later when the blood and urine tests were ordered.... The slight liquor smell on her breath may have indicated that alcohol had been consumed, but, by itself, did not clearly indicate intoxication. To justify an internal search without consent or a warrant, there must be a 'clear indication' that the defendant was intoxicated. But here there was mere suspicion *uncorroborated* by any of the familiar signs of intoxication.

*Williams,* 192 Colo. at 258–59, 557 P.2d at 407 (emphasis added). Hence, an accident involving a person who admits to having imbibed an alcoholic beverage six to nine hours before will not, alone, support a conclusion that probable cause exists.

In this case, any suspicion Officer Williams may have had that Reynolds was intoxicated was not corroborated by observations of a witness or by his own observations of any of the familiar signs of intoxication. Williams testified at the suppression hearing that he did not observe Reynolds to have any odor of alcohol, bloodshot eyes, or slurred speech. Under these circumstances where no evidence was presented suggesting that Reynolds had driven recklessly and no physical symptoms or indications were observed suggesting that Reynolds was intoxicated, we must agree with the finding of the trial court that Officer Williams did not have probable cause to order a blood test without Reynolds' consent.

## C

■ The People contend that "all of the facts known" to Officer Williams prior to his requesting that the nurse extract Reynolds' blood, combined with "his experience and training" establish sufficient probable cause to justify the internal search. We agree that due consideration must be given to a law enforcement officer's training and experience in determining the significance of an officer's observations in the context of probable cause. *Henderson v. People*, 879 P.2d 383, 392 (Colo. 1994); *People v. McCoy*, 870 P.2d 1231, 1235 (Colo.1994); *People v. Edwards*, 836 P.2d 468, 472 (Colo.1992). Nevertheless, is it not the mere fact of an officer's experience or training that creates probable cause. It is, instead, the reasonable conclusions resulting from the nexus of such training and the officer's observations or information provided by others. In this case, we test those conclusions based upon observations of Officer Williams and others of conduct related to the familiar signs of intoxication, none of which existed here. Moreover, without witnesses, events or acts observed by the officer must ultimately meet the necessary standards of probable cause by establishing a factual basis which would warrant a belief that the defendant is intoxicated. *Roybal*, 655 P.2d at 413; *Williams*, 192 Colo. at 257, 557 P.2d at 407. No such belief is warranted on this record.

Officer Williams testified that, in his experience,[6] drivers "tend to be misleading" about how much they have had to drink. However, Officer Williams had no factual basis upon which to corroborate his assumption as applicable to this defendant at this particular time. He testified that although he usually based his opinion regarding whether a driver had been drinking on "the odor of alcohol" on their breath, he did not detect any odor of alcohol on Reynolds' breath. In the present case, Officer Williams' suspicion that Reynolds may have been "misleading" about his alcohol consumption was not supported by more than his experience as to persons other than Reynolds. Moreover, the record does not indicate evidence either from witnesses

or based on Reynolds' conduct which would have provided a clear indication that Reynolds was intoxicated. Reynolds exhibited no objective signs of intoxication that were observed by Officer Williams or any other person, and no evidence was presented suggesting that Reynolds had recklessly caused the accident in which he was involved.

## IV

In sum, because the trial court applied the correct legal standard and the record supports its conclusion that the blood samples were taken from the defendant without probable cause, we affirm the district court's order suppressing the test results.

VOLLACK, J., dissents, and ROVIRA, C.J., joins in the dissent.

ERICKSON, J., does not participate.

Justice VOLLACK dissenting:

The majority concludes that Officer Williams did not have probable cause to obtain a blood sample from the defendant, Rance Randall Reynolds (Reynolds), without his consent. Relying simply on the fact that the People did not produce any evidence as to physical manifestations or behavior by Reynolds which would clearly indicate intoxication, the majority determines that there was "[nothing] independent of the fact of the accident ... that support[s] a reasonable conclusion that the accident was alcohol-related," that is, "[no] factual basis to warrant a finding of probable cause." Maj. op. at 1062. The majority therefore affirms the trial court's order suppressing the defendant's blood alcohol test.

I disagree with the majority's analysis. I believe that the majority raises the standard of probable cause in obtaining a blood sample without a defendant's consent to a higher threshold than the law requires. In my view, the fact that a single-car accident had occurred in which Reynolds was the driver, that Reynolds had admitted to consuming approximately three beers earlier that eve-

---

**6.** Officer Williams testified that prior to June, 1993, he had investigated between nine to twelve

cases involving alcohol-related traffic offenses.

ning, and that the officer had extensive experience and training in investigating DUI cases, satisfies the probable cause requirement for obtaining a blood sample to determine if Reynolds was intoxicated at the time of the accident without Reynolds' consent. Because I believe that the evidence when viewed under the totality of the circumstances satisfies the probable cause requirement, I dissent to the majority opinion and would reverse the district court's suppression of the blood test results.

## I.

Reynolds was charged with vehicular assault,[1] driving under the influence of alcohol,[2] driving with excessive alcohol content,[3] and reckless driving.[4]

Reynolds moved to suppress several items of evidence, including, *inter alia*, the results of the blood alcohol test performed on him at the hospital. On November 21, 1994, the Yuma County District Court held a suppression hearing in which Officer David L. Williams of the Wray Police Department testified. A brief review of Officer Williams' testimony which reflects the uncontroverted facts and circumstances surrounding this case, in addition to those set out in the majority opinion, is helpful.

Reynolds was the driver of an automobile involved in a single-vehicle traffic accident at approximately 3:00 a.m. The car hit the guardrail and caught fire. Reynolds and his passenger escaped from the vehicle; however, they both sustained burns requiring medical attention and were transported to the hospital.

Officer Williams was dispatched to the hospital to investigate the accident. Officer Williams had not been at the scene of the accident and therefore did not have an opportunity to conduct an on-the-scene investigation.

Officer Williams, a uniformed police officer, approached Reynolds, who was in the emergency room receiving medical treatment. Officer Williams identified himself to Reynolds as the officer investigating the accident. Officer Williams asked Reynolds if he was the driver of the car; Reynolds stated that he was. Officer Williams additionally asked Reynolds if he had consumed any alcoholic beverages prior to the accident. Reynolds stated that he had consumed approximately three beers between 6:30 and 8:30 p.m. that night. Officer Williams testified that he did not observe any slurred speech, bloodshot eyes, or incoherent behavior, and was unable to recall whether he smelled the odor of an alcoholic beverage on Reynolds' breath. According to Officer Williams, he asked Reynolds to submit to a blood alcohol test since the officer was unable to administer a breathalyzer test given the burned and blistered condition of Reynolds' lips. Reynolds refused to perform this test.

Officer Williams testified that in his career as a police officer he had investigated approximately nine to twelve DUI cases. Based on his experience in investigating DUI cases, Officer Williams testified that persons suspected of driving under the influence tend to minimize the amount of alcohol they have consumed and exaggerate the amount of time that has transpired since they have consumed it.

Officer Williams was advised by the emergency room doctor that blood was going to be drawn from the defendant. Officer Williams therefore ordered a medical staff member to draw Reynolds' blood to test his blood alcohol content since the officer suspected that an alcohol-related offense may have occurred. The officer provided the staff person with a DUI blood testing kit and Reynolds' blood was drawn approximately an hour and a half after the accident had occurred. Officer Williams testified that the test results indicated Reynolds' blood alcohol level to have been at .129.[5]

---

1. § 18–3–205(1)(b)(I), 8B C.R.S. (1994 Supp.).

2. § 42–4–1202(1)(a), 17 C.R.S. (1993).

3. § 42–4–1202(1.5), 17 C.R.S. (1993).

4. § 42–4–1203, 17 C.R.S. (1993).

5. Section 18–3–205(2)(c), 8B C.R.S. (1994 Supp.), provides as follows:

   (2) In any prosecution for a violation of [vehicular assault], the amount of alcohol in the defendant's blood or breath at the time of the commission of the alleged offense, or within a

At the conclusion of the hearing, the district court suppressed the results of the blood test performed on Reynolds at the hospital, finding that Officer Williams lacked probable cause to request that blood be drawn. Specifically, the trial court reasoned as follows:

> In [*People v.] Sutherland,* [683 P.2d 1192 (Colo.1984),] however, the defendant ... says "I was too drunk and I was in the back seat." Had a situation in the *Sutherland* case where two people claimed that the other guy was driving the vehicle, but they were both observed by the officer, either by their statements or by their behaviors, to be under the influence. We don't have that. All we have is evidence of three beers from 6 to 8 [p.m]. And I don't think the officer had any probable cause in this case to demand blood tests.

## II.

An officer, having probable cause to believe that a person was driving a motor vehicle while under the influence of alcohol and that the conduct was the proximate cause of serious bodily injury to another person, may request that the person submit to a blood test for purposes of determining the alcoholic content within his system. If the person refuses to cooperate in the implementation of such a test, the test may be performed at the direction of the police officer having probable cause, without the person's consent. § 18–3–205(4)(a), 8B C.R.S. (1994 Supp.).

Probable cause exists when the facts and circumstances known to the officer are sufficient to warrant the belief by a reasonable and prudent person, in light of that person's training and experience, that the blood sample will provide evidence that the defendant was driving while intoxicated. *See People v. Roybal,* 655 P.2d 410 (Colo.1982). "In evaluating probable cause, we have often stated that probability, not certainty, is the touchstone of reasonableness under the fourth

amendment...." *People v. Thompson,* 793 P.2d 1173, 1175 (Colo.1990).

The purpose of a blood test, when a serious accident has occurred and a driver/suspect is in need of prompt medical attention, is to confirm or dispel suspicions of intoxication by preserving highly evanescent evidence of the blood alcohol content.

I agree with the majority that the trial court applied the correct legal standard—a probable cause standard. I dissent because in my view the fact that a single-car accident had occurred in which Reynolds was the driver, that Reynolds had admitted to consuming approximately three beers earlier that evening, and that the officer had extensive experience and training in investigating DUI cases, satisfies the probable cause requirement for obtaining a blood sample without Reynolds' consent. I therefore would reverse the district court's suppression of the blood test results.

The majority devalues the significance of the officer's experience in DUI investigations that persons driving under the influence of alcohol tend to minimize the amount of alcohol they have consumed and exaggerate the length of time that has transpired since they consumed it, and instead focuses solely on the fact that the officer did not observe any physical symptoms or indications suggesting that Reynolds was intoxicated. Maj. op. at 1062–1063. In determining that the evidence merely presented a suspicion that Reynolds was involved in an alcohol-related offense, the majority reasons as follows:

> [T]he occurrence of an automobile accident involving a person who had three beers more than six hours before the accident, while creating a suspicion that alcohol consumption played a role, does not alone provide a sufficient basis for a reasonable and prudent person to conclude the defendant was driving while intoxicated. Here, because there were no witnesses to the speed and direction of the pickup truck

reasonable time thereafter, as shown by analysis of the defendant's blood or breath, shall give rise to the following presumptions:
....
(c) If there was at such time 0.10 or more grams of alcohol per one hundred milliliters of

blood, or if there was at such time 0.10 or more grams of alcohol per two hundred ten liters of breath, it shall be presumed that the defendant was under the influence of alcohol.

before the accident, there is no factual basis or evidence to conclude that Reynolds' accident occurred as a result of his misconduct or due to his driving under the influence of alcohol. No evidence was presented to suggest that Reynolds had been driving recklessly or that he had engaged in any misconduct.

Maj. op. at 1062.

In my opinion, the majority raises the probable cause standard to a higher threshold than the law requires. The fact that there were no witnesses to the accident does not diminish the officer's belief that the accident may have been alcohol-related.

Further, the majority's reliance on *People v. Williams*, 192 Colo. 249, 557 P.2d 399 (1976), for the proposition that "evidence of drinking on the day of the suspected illegal conduct, alone, will not establish probable cause," maj. op. at 1061, is misplaced since at issue in *Williams* was the investigation of a homicide in which the defendant was charged with manslaughter, and not with any crime directly related to alcohol. Underlying this court's conclusion in *Williams* that the evidence supported "no more than a mere suspicion that she might have been intoxicated several hours later," 557 P.2d at 407, was the fact that evidence did not exist indicating that the defendant had consumed an alcoholic beverage, the amount of alcohol that she drank, or the time lapse between the shooting and when she allegedly had several alcoholic beverages. Moreover, under the circumstances presented in *Williams*, no exigent circumstances existed to justify the police in taking a blood sample without first obtaining a warrant. *Id.* at 404, 192 Colo. 249. This is not the situation presented here, where Reynolds admitted to the police officer that he had consumed several alcoholic beverages earlier that evening and was involved in a car accident later that night and where Reynolds was in the hospital in serious condition.

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the defendant had been involved in an automobile accident and was taken to a hospital. Although Schmerber refused to allow his blood to be withdrawn, a sample of the defendant's blood was withdrawn by a physician at the police officer's request.

The Supreme Court held that the police were justified in taking the blood sample from the defendant. The Court noted that the taking of a blood sample without permission did not violate the Fourth Amendment so long as the circumstances justified taking the sample and the means and procedures used to obtain the sample were reasonable. *Id.* at 770, 86 S.Ct. at 1835. The Court concluded that, under the circumstances, the officers were justified in taking the sample because there was probable cause to believe that Schmerber had been driving while under the influence of alcohol and because the inevitable dissipation of alcohol in the blood created exigent circumstances. The Court reasoned as follows:

> Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.

*Id.* at 771, 86 S.Ct. at 1836 (citation omitted).

In *People v. Sutherland*, 683 P.2d 1192 (Colo.1984), we adopted the four-part test set forth in *Schmerber*, which governs the taking of an involuntary blood sample from a putative defendant who is suspected of an alcohol-related driving offense. These requirements are: (1) probable cause for arrest of the defendant for an alcohol-related driving offense, (2) a clear indication that the blood sample will provide evidence of the defendant's level of intoxication, (3) exigent circumstances which make it impractical to obtain a search warrant, and (4) that the test be reasonable and be conducted in a reasonable manner. *Id.* at 1194.

In my view, the facts set forth in the record satisfy the four-pronged test of *Schmerber*. First, as we concluded in *Sutherland*, 683 P.2d at 1196, "an arrest is not a precondition to obtaining a blood sample from a person suspected of committing an

alcohol-related offense." I therefore proceed to the second requirement. The facts before Officer Williams upon which he based his probable cause determination were: (1) a single-car accident had occurred in the city of Wray, Colorado (Yuma County), and as a result, both Reynolds and his passenger were severely injured; (2) the car carrying both Reynolds and his passenger hit the guardrail and caught fire; (3) Reynolds admitted to the Officer that he had imbibed approximately three alcoholic beverages several hours before the accident; and (4) Officer Williams had investigated approximately nine to twelve DUI cases and it was his experience that persons suspected of driving under the influence tend to minimize the amount of alcohol they have consumed and exaggerate the amount of time that has transpired since they consumed it.

In my view, these facts establish a clear indication that a blood sample would provide evidence of the defendant's level of intoxication. Further, it is known that alcohol in the blood after drinking

> begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Schmerber*, 384 U.S. at 770–71, 86 S.Ct. at 1835–36.

These considerations apply to the facts presented here. In the instant case, where time had to be taken to transport Reynolds to a hospital and to investigate the scene of the accident, the dissipation of alcohol in the blood created an exigent circumstance. The exigent circumstance existing here made it impractical to obtain a search warrant, and the third part of the *Sutherland* test is therefore met.

Finally, as in *Schmerber*, the extraction of blood for a blood-alcohol test was reasonable because it "is a highly effective means of determining the degree to which a person is under the influence of alcohol." 384 U.S. at 771, 86 S.Ct. at 1836. Reynolds' blood extraction was performed in a hospital, according to accepted medical practices, and therefore the fourth prong of *Sutherland* is also met.

In my view, there was probable cause to administer a blood alcohol test because the officer knew that a serious accident had occurred at approximately 3:00 a.m., the defendant admitted he was the driver of the car, and the defendant admitted he had been drinking earlier that evening. Although Officer Williams did not observe any physical manifestations indicative of intoxication as Reynolds lay inactive on the emergency room table, the factual circumstances known to the officer prior to his requesting Reynolds to have blood drawn, combined with his experience and training, gave the officer probable cause to believe that Reynolds was probably under the influence of alcohol. Because I believe there was probable cause and exigent circumstances sufficient to justify obtaining a blood sample to determine if Reynolds was intoxicated at the time of the accident without Reynolds' consent, I dissent.

I am authorized to say that Chief Justice ROVIRA joins in this dissent.