The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Mark SCHALL, Defendant–Appellee.

No. 02SA263.

Supreme Court of Colorado,
En Banc.

Dec. 16, 2002.

James J. Peters, District Attorney, William Hood III, Chief Deputy District Attorney, Englewood, Colorado, Attorneys for Plaintiff–Appellant.

Joseph A. Lazzara, Westminster, Colorado, Attorney for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal, filed pursuant to C.A.R. 4.1 and section 16–12–102(2), 6 C.R.S. (2002), the prosecution appeals the district court's suppression of blood alcohol evidence that the Colorado Highway Patrol obtained from the defendant, Mark Schall. We reverse the district court's suppression order. The district court incorrectly concluded that the police lacked probable cause to arrest Schall for an alcohol-related offense, a precondition to collecting blood from him. The facts supporting probable cause in this case are that an eyewitness observed Schall driving his car into oncoming traffic, the police smelled the odor of an alcoholic beverage from his badly wrecked car, and the police saw broken beer bottles inside the car. Because the constitutional prerequisites to collecting a blood sample[1] from a non-consenting suspect are satisfied in this case, the Fourth Amendment to the United States Constitution does not bar admission of the blood alcohol evidence.

## I.

This case involves an automobile accident that occurred in the early morning of April 2, 2001, on Colorado Highway 85 in Douglas County. The facts at the suppression hearing were that Schall's car crossed the centerline of the highway and collided with a semi-truck headed in the opposite direction. A second semi-truck, following behind the first, veered off the road to avoid Schall and the first truck. In the process, the second truck overturned, killing the driver.[2] Schall was seriously injured. The police did not have an opportunity to interview Schall or conduct a roadside sobriety test before a helicopter evacuated him to a hospital.

The police relied on facts at the scene of the accident to establish probable cause to believe that Schall was driving under the influence of alcohol.[3] First, an eyewitness saw Schall driving over the centerline of the highway and striking the semi-truck. The police observed that there were no skid marks, which would have indicated that Schall tried to brake or dodge an animal or other obstacle in the road and lost control of his vehicle before colliding with the semi-truck.

▮ Second, the police smelled a strong odor of an alcoholic beverage from Schall's car. The police saw several broken beer bottles in his car, along with one intact bottle.[4] Based on the circumstances of the accident and the smell of an alcoholic beverage from Schall's badly wrecked vehicle, the police ordered blood draws while Schall was undergoing treatment for injuries sustained in the accident. Schall did not consent to the collection of these samples.[5] The samples were obtained within two hours of the accident.

Based in part on test results from Schall's blood draws, the prosecution charged him

---

1. At the suppression hearing, counsel for Schall requested suppression of the blood draw evidence. The trial court suppressed the blood draw evidence, and we review only this question.

2. Tragically, the drivers of the two trucks were brothers.

3. In addition to the two facts listed, the officers obtained a statement from a paramedic who treated Schall who said that Schall smelled of alcohol. However, the trial court found that the police did not have this information when they dispatched an officer to the hospital to collect the blood sample from Schall.

4. A follow-up investigation performed many months after the accident revealed that all of the bottles were capped when broken. Troopers at the scene did not (and perhaps could not, due to the extent of the wreckage) ascertain whether all of the caps were on the bottles, and consequently did not know whether any bottles were open at the time of the accident.

5. The officer dispatched to the hospital did not testify at the suppression hearing, and the trial court found that there was no evidence that Schall consented. The trial court therefore correctly presumed that Schall did not consent to the blood draws.

with vehicular homicide[6] and driving under the influence of alcohol, drugs, or both.[7] In a pretrial motion, Schall sought to suppress the results of his blood tests, arguing that the police obtained the evidence without probable cause. After a hearing, the trial court granted Schall's motion. It determined that the information known to the police at the time of the blood draws was not sufficient for probable cause to believe that Schall had committed an alcohol-related driving offense.

## II.

We hold that probable cause existed for Schall's blood draws and testing. The facts at the suppression hearing were that Schall caused the accident by driving his car into oncoming traffic, the interior of his badly wrecked car smelled of an alcoholic beverage, and the police observed broken beer bottles in the car. Because the constitutional prerequisites to collecting a blood sample from a non-consenting suspect are satisfied in this case, the Fourth Amendment to the United States Constitution does not bar admission of the blood alcohol evidence.

### A. Standard of Review

In reviewing a suppression appeal, we defer to the trial court's findings of fact if they are supported by the record and review the trial court's legal conclusions de novo. *E.g. People v. Hebert*, 46 P.3d 473, 480 (Colo. 2002).

The taking of blood evidence from one's person is subject to the protections of the Fourth Amendment to the United States Constitution. *People v. Diaz*, 53 P.3d 1171, 1174–75 (Colo.2002). We have enumerated four criteria for evaluating the constitutionality of warrantless, non-consensual blood draws to test for the presence of alcohol: (1) there must be probable cause for the arrest of the defendant on an alcohol-related driving offense; (2) there must be a clear indication that the blood sample will provide evidence of the defendant's level of intoxication; (3) exigent circumstances must exist which make it impractical to obtain a search warrant;

and (4) the test must be a reasonable one and must be conducted in a reasonable manner. *People v. Sutherland*, 683 P.2d 1192, 1194 (Colo.1984).

We determine that the prosecution has met each of these criteria, requiring us to reverse the trial court's order suppressing evidence from Schall's blood draws.

### B. Application of the *Sutherland* Test

The crux of this interlocutory appeal is the first prong of the *Sutherland* test, whether the police had probable cause to arrest Schall for committing an alcohol-related driving offense. The police have probable cause to arrest when the facts and circumstances known to the police are sufficient to warrant the belief by a reasonable and prudent person that the defendant committed an alcohol-related offense. *People v. MacCallum*, 925 P.2d 758, 762 (Colo.1996). The probable cause determination rests on all of the facts and circumstances known to the police at the time of the arrest. *Id.; People v. Washington*, 865 P.2d 145, 147 (Colo.1994). Absolute certainty that the defendant committed the offense is not necessary; rather, probable cause involves that degree of certainty upon which reasonable and prudent people rely in making decisions in everyday life. *MacCallum*, 925 P.2d at 762; *People v. Thompson*, 793 P.2d 1173, 1175 (Colo.1990).

In *MacCallum*, we reviewed circumstances of a head-on automobile wreck from which the defendant driver had been transported to the hospital. The police could not ascertain the smell of an alcoholic beverage at the scene, due to MacCallum's evacuation and the extent of the wreckage. Nevertheless, we determined that the police had probable cause to take a blood draw from MacCallum, based on witness statements that he had been weaving across traffic lanes for a number of miles and drove into an oncoming vehicle. *MacCallum*, 925 P.2d at 762–63.

In *MacCallum*, we reviewed and distinguished two cases which held that no probable cause existed for an alcohol-related offense. In *People v. Reynolds*, 895 P.2d 1059,

---

6. § 18–3–106(1)(b), 6 C.R.S. (2001).

7. § 42–4–1301, 11 C.R.S. (2001).

1062 (Colo.1995), we held that a driver's one-car accident buttressed by the driver's admission to drinking three beers, six to nine hours before the accident, did not meet the standard of probable cause, in the absence of evidence that the accident occurred as a result of the driver's misconduct or due to the influence of alcohol. In *People v. Roybal*, 655 P.2d 410, 413 (Colo.1982), we held that the odor of an alcoholic beverage on the defendant was insufficient to support probable cause when there was no evidence that the collision occurred as a result of the defendant's misconduct. On the other hand, in *People v. Shepherd*, 906 P.2d 607, 609–10 (Colo.1995), we held that probable cause existed based on evidence that the defendant was at fault for a traffic accident resulting in death and serious injury, the presence of empty beer cans near the accident scene, and the odor of an alcoholic beverage on defendant's breath.

 Our Fourth Amendment jurisprudence contains both guidance and caution. A court must take into account the totality of circumstances known to the police. Facts in combination may support probable cause, whereas facts in isolation may not. *See People v. Altman*, 960 P.2d 1164, 1171 (Colo. 1998); Wayne R. LaFave, *Search and Seizure* § 3.2(e) at 70 (3d ed.1996). In evaluating probable cause, the police may use their judgment, experience, and training in evaluating the circumstances and assessing the combined importance of the individual facts. *Henderson v. People*, 879 P.2d 383, 392 (Colo. 1994) ("Due consideration should be given to a law enforcement officer's experience and training in evaluating the significance of the officer's observations relevant to probable cause.")

 Probable cause may be based on circumstantial evidence, and the police are entitled to draw appropriate inferences from the circumstantial evidence, even though the evidence might also support other inferences. *See People v. Hebert*, 46 P.3d 473, 482 (Colo. 2002) (quoting *People v. Hakel*, 870 P.2d 1224, 1229 (Colo.1994)).

Here the police had probable cause to believe that Schall caused the accident by driving into oncoming traffic.[8] They found no skid marks, animal remains, or roadway obstructions that might explain the cause of the accident. They smelled the odor of an alcoholic beverage coming from within the open area of the vehicle accessible to the driver. They observed broken and intact beer bottles in the wreckage, but, due to the extent of the vehicle's damage, they could not tell whether one or more of the bottles had been opened prior to the accident or whether the bottles had all been capped and all but one were shattered in the collision. They could not interview Schall at the scene due to his emergency evacuation.

The trial court determined that the circumstances of the head-on collision, the smell of an alcoholic beverage in the vehicle, and the presence of broken beer bottles did not support probable cause. We disagree. Like *MacCallum* and unlike *Reynolds* and *Roybal*, Schall caused this head-on accident by driving into the opposite lane of traffic. Like *MacCallum*, based on the knowledge and experience of officers investigating at the scene, the circumstances of the collision were consistent with Schall driving under the influence of alcohol. The smell of an alcoholic beverage at the scene and the presence of broken beer bottles in Schall's car supported the reasonableness of this inference, as in *Shepherd*. Under these circumstances, the police had probable cause to believe that Schall had committed an alcohol-related offense, satisfying the first criterion of our *Sutherland* test.

 The second prong of the *Sutherland* test requires clear indication that a blood draw will show the amount of alcohol, if any, in the defendant's blood at the time of the alcohol-related offense. *Sutherland*, 683 P.2d at 1194. If the police wait too long, a blood test will be ineffective. Likewise, if a defendant drank heavily after an offense, a blood test might not show the level of alcohol in the defendant's blood at the time of the offense. The timing of the blood draw is therefore significant to the reliability of blood

8. This is an important distinction from *Reynolds*, where the police did not know whether the defendant's misconduct had caused the accident. *Reynolds*, 895 P.2d at 1062.

evidence. A blood test that will not produce reliable evidence is unreasonable under the Fourth Amendment because there is no state interest to balance the invasion of the defendant's body.

Here, the police made the decision to take the blood draws in a timely fashion. There was clear indication that the procedure would provide evidence of Schall's blood alcohol level. The second *Sutherland* criterion is satisfied.

The third prong of the *Sutherland* test requires that exigent circumstances exist for police proceeding without a search warrant. *Sutherland,* 683 P.2d at 1194. Because alcohol dissipates quickly in the blood, exigent circumstances exist "when time has elapsed while the driver is transported to a hospital and the investigating officer is detained at the accident scene." *Shepherd,* 906 P.2d at 610. In this case, Schall had been airlifted to a hospital. Exigent circumstances existed for investigating officers at the scene to direct a hospital blood draw. The third *Sutherland* criterion is satisfied.

Finally, a blood test must be a reasonable one, and must be conducted in a reasonable manner. *Sutherland,* 683 P.2d at 1194. A blood test is reasonable when it is "an effective means of determining the degree to which a person is under the influence of alcohol." *Shepherd,* 906 P.2d at 611. The police conduct the test in a reasonable manner when it is "administered in a hospital according to accepted medical practice." *Id.* There is no challenge in this case to the means the police chose to extract and test Schall's blood.[9] The test was administered in a hospital, presumably in accord with accepted medical practice. The fourth *Sutherland* criterion is satisfied.

### III.

Accordingly, we reverse the trial court's suppression order and remand this case for further proceedings consistent with this opinion.

---

9. Schall apparently intends to claim at trial that the evidence is not reliable because laboratory tests of the same sample differed from each other, with one test indicating a blood alcohol level of .057 and the other indicating .111. This question is not before us in this interlocutory appeal, and we express no opinion regarding it.