The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Ronald Brett GRASSI, Defendant–
Appellant.

No. 09CA0400.

Colorado Court of Appeals,
Div. I.

Oct. 13, 2011.

John W. Suthers, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

· Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY.

A division of this court in *People v. Grassi*, 192 P.3d 496, 498 (Colo.App.2008) *(Grassi I)*, remanded this case to the trial court for a hearing to determine whether the People had probable cause to draw defendant's blood. Defendant, Ronald Brett Grassi, now appeals the order entered by the trial court on remand, denying his motion to suppress blood alcohol content (BAC) test results. We affirm.

## I. Background

Defendant was the driver in a single-car accident resulting in the death of the vehicle's passenger. *Id.* at 497. A jury convicted defendant of vehicular homicide, manslaughter, driving under the influence of alcohol or drugs (DUI), and driving with excessive BAC. *Id.*

Defendant was transported to the hospital before police arrived. Trooper Duncan was dispatched to the hospital with instructions to take defendant's blood sample "if [he] found out that alcohol was involved at the time." When the trooper arrived, defendant was unconscious, and the trooper detected a strong odor of alcohol on him. The trooper gave an attending nurse a blood draw kit and instructed her to take samples of defendant's blood. The odor of alcohol did not subside during this process, even though three hours had passed since the accident. The blood tests, which were taken three hours after the accident, indicated that defendant's BAC was 0.163 grams of alcohol per 100 milliliters of blood.

On remand, the trial court concluded that the police had had probable cause to draw defendant's blood.

## II. Standard of Review

■ Review of a trial court's suppression ruling presents a mixed question of law and fact. *See People v. Kaiser*, 32 P.3d 480, 483 (Colo.2001). We defer to the trial court's findings of fact unless they are clearly erroneous. *Id.* We review the trial court's legal conclusions de novo. *People v. Brandon*, 140 P.3d 15, 18 (Colo.App.2005).

## III. Applicable Law

■ Section 42–4–1301.1, C.R.S.2010, provides in pertinent part:

(1) Any person who drives any motor vehicle upon the streets and highways ... throughout this state shall be deemed to have expressed such person's consent to the provisions of this section.

(2)(a)(I) A person who drives a motor vehicle upon the streets and highways ... throughout this state shall be required to take and complete, and to cooperate in the taking and completing of, any test or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood or breath when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle in violation of the prohibitions against DUI, DUI per se, DWAI, [or similar crimes]....

. ... .

(8) Any person who is dead or unconscious shall be tested to determine the alcohol or drug content of the person's blood or any drug content within such person's system as provided in this section.

As the division held in *Grassi I*, the police were required to have probable cause to believe defendant had been driving a motor vehicle in violation of any of the laws enumerated in section 42–4–1301.1(2)(a)(I) before drawing blood from him while he was unconscious. *See Grassi I*, 192 P.3d at 498.

■ "The probable cause determination rests on all of the facts and circumstances known to the police at the time of the arrest." *People v. Schall*, 59 P.3d 848, 851 (Colo.2002). Probable cause to draw blood exists when the facts and circumstances known to the police support the reasonable belief that the defendant committed an alcohol-related offense. *Cf. id.* ("The police have probable cause to arrest when the facts and circumstances known to the police are sufficient to warrant the belief by a reasonable and prudent person that the defendant committed an alcohol-related offense."). "Probable cause may be based on circumstantial evidence, and the police are entitled to draw appropriate inferences from the circumstantial evidence, even though the evidence might also support other inferences." *Id.* at 852.

## IV. Probable Cause

Defendant contends the trial court erred in its determination that the police had probable cause to draw his blood. We disagree.

### A. Driving a Motor Vehicle

■ Defendant first contends the prosecution failed to meet its burden of proof to demonstrate the police had probable cause to believe he was the driver. However, defendant did not raise this argument in the remand hearing. He therefore cannot contest this issue on appeal. *See People v. Salyer*, 80 P.3d 831, 835 (Colo.App.2003) (court declined to consider grounds for suppression of evidence that defendant did not raise in trial court). In any event, we note that testimony on this issue at the remand hearing contradicted defendant's position on appeal. This testimony indicated that defendant admitted to driving by telling medical personnel that he had swerved the car to miss a deer.

### B. Driving Under the Influence or While Ability Impaired

Defendant next contends the prosecution failed to meet its burden to establish probable cause that he was driving under the influence of alcohol. We discern no reversible error.

#### 1. *Roybal* and *Reynolds*

■ Defendant argues that this case is analogous to *People v. Reynolds*, 895 P.2d 1059 (Colo.1995), and *People v. Roybal*, 655 P.2d 410 (Colo.1982). In *Reynolds*, the defendant admitted to drinking three beers more than six hours before the accident. *Reynolds*, 895 P.2d at 1060. Other than that admission and the fact of the single-vehicle accident, the police there did not have any evidence to support probable cause that the defendant was driving under the influence. *Id.* The court held that the prosecution did not "present witnesses or observations of the investigating officer that, independent of the fact of the accident, provide evidence of the condition of Reynolds at the time of the accident sufficient to support a reasonable conclusion that the accident was alcohol-related." *Id.* at 1061–62. Under these circumstances, the supreme court held that the police did not have probable cause to collect a blood sample from the defendant. *Id.* at 1063.

In *Roybal*, the record was "barren of evidence that the collision occurred as a result of misconduct by the defendant." *Roybal*, 655 P.2d at 413. The record only demonstrated "that an accident took place, the defendant was driving one of the cars involved, and he had an odor of alcoholic beverage about him." *Id.* Under those circumstances, the prosecution "did not carry [its] burden to prove the existence of probable cause." *Id.*

Unlike in *Reynolds* and *Roybal*, the prosecution in this case presented more evidence than merely the occurrence of an accident involving defendant and an odor of alcohol. Two state troopers, one of whom was a member of the accident reconstruction team (Trooper Waters), presented the following testimony:

- Defendant's car was found more than 200 feet from the roadway.
- The troopers did not find any evidence of skid or yaw marks at the accident scene, indicating that defendant had not applied the brakes.
- There was no damage to the car and no problem with it that appeared to have caused or contributed to the accident.
- The troopers did not observe anything on the roadway that might have contributed to the accident.
- The weather conditions were clear, dry, and warm at the time of the accident.
- Trooper Waters testified that defendant's vehicle appeared to follow the "fog line" (the white line along the edge of the road) off the road as the line curved at an intersection, and that such driving behavior is common among intoxicated drivers.

This case is distinguishable from both *Roybal* and *Reynolds* because the troopers here had substantially more circumstantial evidence than was present in those cases indicating that defendant caused the accident and that his driving was erratic. Additionally, unlike in *Roybal* and *Reynolds*, defendant still had a strong odor of alcohol three hours after the accident. The totality of the evidence in this case was sufficient to provide Trooper Duncan with probable cause to collect defendant's blood. *See People v. Shepherd*, 906 P.2d 607, 609–10 (Colo.1995) (totality of evidence was sufficient to provide

probable cause to arrest the defendant where skid marks indicated he had been driving too fast, there was no evidence of an external cause of the accident, beer cans were found near the defendant's truck, and an officer smelled alcohol on his breath and observed him behaving erratically).

■ Additionally, *Roybal* and *Reynolds* did not address one of the charges that was pertinent here, namely, driving while ability impaired (DWAI). *See Reynolds,* 895 P.2d at 1060 ("Reynolds was charged with driving under the influence of alcohol, driving with excessive alcoholic content, vehicular assault, and reckless driving." (footnotes omitted)); *Roybal,* 655 P.2d at 412 n. 4 ("We understand the People's argument to be that there was probable cause to believe the defendant was under the influence of intoxicating liquor when he drove his vehicle...."). Under section 42–4–1301.1(2)(a)(I), police need probable cause to believe that a person was driving a motor vehicle in violation of the prohibitions against DUI, DWAI, or other similar crimes before they may require that person to submit to testing. Because DWAI has a lower proof threshold than DUI, the probable cause determination for DWAI has a lower proof threshold as well. *Compare* § 42–4–1301(1)(f), C.R.S.2010 (" '[d]riving under the influence' means driving a motor vehicle ... when a person has consumed alcohol ... that affects the person to a degree that the person is substantially incapable ... to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle"), *with* § 42–4–1301(1)(g), C.R.S.2010 (" '[d]riving while ability impaired' means driving a motor vehicle ... when a person has consumed alcohol ... that affects the person to the slightest degree so that the person is less able than the person ordinarily would have been ... to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle").

The trial court on remand held that the police had probable cause to believe defendant may have committed DWAI. This determination, together with the circumstances indicating defendant was at fault in the accident and the fact of defendant's persistent odor of alcohol, distinguishes this case from *Roybal* and *Reynolds.*

### 2. Trooper Waters's Observations

■ Defendant next argues that Trooper Waters's accident reconstruction analysis cannot be considered in determining probable cause because it was not completed before Trooper Duncan's blood draw. While Trooper Waters's formal report was not completed before the blood draw, his observations of the accident scene were completed by that time. As a result of this fact, and in light of the fellow officer rule, we may consider Trooper Waters's testimony regarding his observations of the accident scene. *See Schall,* 59 P.3d at 851 ("The probable cause determination [for probable cause to arrest] rests on all of the facts and circumstances known to the police at the time of the arrest.").

### 3. The Fellow Officer Rule

■ Defendant also contends that the fellow officer rule does not apply to this case. We disagree.

■ "The fellow officer rule provides that a law enforcement officer who does not personally possess a sufficient basis to make an arrest nevertheless may do so if (1) he acts at the direction or as a result of communications with another officer, and (2) the police as a whole possess a sufficient basis to make the arrest." *People v. Arias,* 159 P.3d 134, 139 (Colo.2007). We apply the fellow officer rule here to the determination of whether there was probable cause to draw defendant's blood under section 42–4–1301.1.

■ Defendant argues that Trooper Waters's observations should not enter into the probable cause determination because Trooper Duncan had no contact with Waters, and Waters did not direct Duncan to draw defendant's blood. However, the fellow officer rule does not require direct contact between Duncan and Waters in order for the latter's observations to enter into the probable cause determination. *See Arias,* 159 P.3d at 139 (referencing knowledge of "the police as a whole"); *see also People v. Fields,* 785 P.2d 611, 613 (Colo.1990) ("We have upheld con-

victions where an arresting officer, without probable cause, acted at the direction of a dispatcher, and the police as a whole possessed probable cause.") (citing *People v. Freeman*, 668 P.2d 1371, 1377–78 (Colo.1983); *People v. Baca*, 198 Colo. 399, 402, 600 P.2d 770, 771–72 (1979); and *People v. Nanes*, 174 Colo. 294, 300–01, 483 P.2d 958, 962 (1971)).

Defendant also argues that the fellow officer rule does not apply because Corporal Riley's direction to Trooper Duncan to take a blood draw "if [he] found out that alcohol was involved at the time" demonstrates that Corporal Riley lacked probable cause. We are not persuaded. The fellow officer rule does not require that any individual officer have probable cause; rather, the rule is satisfied if "the police as a whole" have probable cause. *Arias*, 159 P.3d at 139.

Nevertheless, defendant points us to the *Arias* court's conclusion that the fellow officer rule did not apply there. The facts of *Arias* are distinguishable from those in the present case. In *Arias*, Summit County Drug Task Force agents witnessed the defendant's involvement in what they believed to be a drug transaction. *Id.* at 135. After following the defendant for several weeks, the agents observed him driving erratically and making numerous stops and phone calls. *Id.* at 135–36. Believing him to be involved in drug activity, the task force contacted Denver police to request that a patrol officer conduct a traffic stop of the defendant's truck. *Id.* at 136. However, the "agent in charge did not inform [Denver police] dispatch about the earlier observations nor did he tell Denver [p]olice that he believed these observations established a basis to stop the truck." *Id.* Instead, the agent "requested that the patrol officer develop an independent basis for a traffic stop so that the driver would not discover the nature and extent of the surveillance." *Id.*

In concluding that the fellow officer rule did not apply, the supreme court relied on the fact that the Denver patrol officer was instructed to rely on his own observations of the defendant and to develop his own justification for stopping the defendant. It stated, "Because law enforcement officers chose not to rely on the existing information known to the Task Force agents at the time of the traffic stop, the People cannot later claim that, through the fellow officer rule, information [was] imputed to [the Denver patrol officer]." *Id.* at 140.

Here, there was no such instruction for Trooper Duncan to develop an independent basis for further investigation. On the contrary, he was instructed to take defendant's blood if he "found out that alcohol was involved."

We conclude that the facts of *Arias* are distinguishable from those in the present case, and that the trial court correctly applied the fellow officer rule here to conclude there was probable cause to take a blood draw from defendant.

## C. Validity Under the Fourth Amendment

 Defendant contends that because his blood draw violated section 42–4–1301.1(2)(a)(III), C.R.S.2010, the prosecution had the burden to demonstrate that the blood draw satisfied the Fourth Amendment criteria set forth in *People v. Sutherland*, 683 P.2d 1192, 1194 (Colo.1984). We decline to address this argument because defendant did not raise it on remand, *see Salyer*, 80 P.3d at 835, and, in any event, this issue was outside the limited scope of the remand. *Grassi I*, 192 P.3d at 498–99.

The order is affirmed.

Judge TAUBMAN and Judge MILLER concur.